42 A.3d 929 (2012)
426 N.J. Super. 32
STATE of New Jersey, Plaintiff-Respondent,
v.
Raymond D. KATES, a/k/a Raymond D. Stinger, Ray Kates, Dennis Kates, Raymond D. Cakes, Raymond Stingray, Defendant-Appellant.
Docket No. A-3907-10T1
Superior Court of New Jersey, Appellate Division.
Argued March 28, 2012.
Decided May 25, 2012.
*931 Lauren S. Michaels, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Ms. Michaels, of counsel and on the brief).
Meghan O. Price-Furfari, Assistant Prosecutor, argued the cause for respondent (Jennifer Webb-McRae, Cumberland County Prosecutor, attorney; Ms. Price-Furfari, of counsel and on the brief).
Before Judges AXELRAD, SAPP-PETERSON and OSTRER.
The opinion of the court was delivered by
OSTRER, J.S.C. (temporarily assigned).
Defendant Raymond D. Kates appeals from his conviction of second-degree eluding, N.J.S.A. 2C:29-2b (Count 1), and resisting arrest by flight, N.J.S.A. 2C:29-2a(2) (Count 4). Defendant claims the court denied him his constitutional right to counsel of choice by improperly denying him a continuance to hire a private attorney. We agree and reverse.

I.

A.
In addition to the eluding and resisting arrest by flight charges, an April 16, 2008 indictment charged defendant with third-degree aggravated assault consisting of simple assault on a law enforcement officer, N.J.S.A. 2C:12-1b(5)(a) (Count 2); third-degree resisting arrest by use of physical force or violence, N.J.S.A. 2C:29-2a(3)(a) (Count 3); fourth-degree hindering prosecution by force, N.J.S.A. 2C:29-3b(2) (Count 5); and fourth-degree inflicting harm to a law enforcement animal, N.J.S.A. 2C:29-3.1 (Count 6). Defendant also was charged with motor vehicle violations under various complaint-summonses.
Defendant, then fifty-one years old, was driving his green Dodge Ram pick-up truck at around 4 a.m. on May 2, 2007 in a high crime Bridgeton neighborhood known for gang activity. Riding in the passenger seat was a young man, Alfonso McClendon. The vehicle aroused a passing officer's suspicion because the police had received information that an African-American male in a maroon or dark blue small or mid-size truck, perhaps a Chevy S-10 pickup, would be delivering guns in the area. Bridgeton Police Officer Christopher Blackburn began following defendant's truck without activating his emergency lights or siren. Blackburn testified that defendant signaled to turn several times, but did not. After Blackburn activated his emergency lights, defendant rolled through a stop and increased his speed, and Blackburn turned on his siren.
Defendant led police on a chase of six or seven miles, outside the city and then back *932 again, rolling or speeding through additional stops, driving erratically, sometimes coming to a complete halt, and other times reaching speeds of 80 or 90 m.p.h. At one point during the pursuit, when defendant slowed at an intersection, McClendon, fearing for his life, jumped from the truck. Blackburn said defendant almost collided with a passing car.
When defendant's truck ultimately came to rest, defendant ran across a field and into woods, where Blackburn subdued him with the assistance of a police dog and another officer. Both defendant and Blackburn required medical treatment. No guns were found in the truck or in the personal possession of defendant or McClendon.
Defendant explained he was on his way to his brother's house so he could counsel McClendon. He believed the persons in the vehicle behind him intended to harm him, and his fear increased when the vehicle continued to follow him, even after he pulled to the side of the road to let it pass. He claimed he was so fearful, he "blacked out" while driving and did not notice the emergency lights or sirens. On cross-examination, the State introduced, for impeachment purposes, his 2006 conviction for possession of a controlled dangerous substance.[1]
The jury found defendant guilty of Counts 1 and 4, but not guilty of Count 2, as well as not guilty of a lesser-included charge of disorderly persons simple assault (predicated on defendant's alleged lack of knowledge that his alleged victim was a police officer) and not guilty of Count 3. The State had dismissed Counts 5 and 6 before trial. The court found defendant guilty of three instances of failure to stop or yield, N.J.S.A. 39:4-144.
The court granted the State's motion to sentence defendant to an extended term as a persistent offender under N.J.S.A. 2C:44-3(a). Defendant had been convicted of four indictable offenses: second degree robbery in 1973; third degree possession of CDS in 1983; second degree sexual assault and endangering the welfare of a minor in 1992; and, as we mentioned, third degree possession of CDS in 2006. He was also convicted of multiple disorderly persons offenses, including two while free on bail awaiting trial in this case.

B.
We turn now to the circumstances surrounding defendant's request to retain private counsel, the court's denial, and the role of appointed counsel during trial.
Defendant had been free on $50,000 bond since November 19, 2007. The case had been scheduled for trial on July 19, 2010, but the judge could not reach it because he was still in the midst of another ongoing trial. Instead, on that day, the judge conducted a short scheduling conference on the case. Appearing on defendant's behalf, as they had on earlier occasions, were Assistant Deputy Public Defenders Jeffrey G. Klavens and Dionne Stanfield. Also present were Assistant Prosecutor Michael Ostrowski and defendant. The judge stated he intended to begin jury selection in defendant's case on July 27.
Stanfield requested an adjournment until August 3, because she was scheduled to be out of the office the week of July 19. The court denied Stanfield's request, noting that counsel should have been prepared to proceed on July 19. The judge stated, "I don't have the flexibility in my schedule to give you that extra time otherwise *933 I would[.]" However, Ostrowski disclosed the State also had a scheduling problem: the State's witnesses were available the week of July 19, but not necessarily the following week.
In response to the court's inquiry, Ostrowski explained the State's case would not likely consume a full day, and the State would call local police officers and one lay witness. Stanfield stated the defense most likely would call defendant as its only witness. The court then tentatively scheduled jury selection for July 27, and testimony August 10, subject to Ostrowski's confirmation that the State's witnesses would be available.
When the matter came before the court for trial on Tuesday, July 27, 2010, Klavens, an Army Reservist, reported on the record he had received orders that he would likely be deployed overseas during the trial. He initially raised the matter to address how the judge would explain his sudden absence. However, defendant, who first learned in court that Klavens expected to be deployed, had other concerns.[2]
Klavens had been involved in his case longer than Stanfield. It appears Klavens was to be lead counsel, and Stanfield would serve as second-chair, although that is not clear from the record. Klavens requested an adjournment on defendant's behalf so he could retain private counsel, rather than have Klavens withdraw mid-trial. Klavens stated defendant could afford private counsel as he had been employed.[3]
The court denied the request after it obtained Klavens's assurance that Stanfield was prepared to try the case. However, the court did not inquire of Stanfield herself, nor did the court make any findings regarding the two attorneys' relative experience. The court also did not inquire whether the State objected, nor did it elicit any evidence from defendant himself regarding his financial capacity to retain counsel, the length of the continuance he sought, and his reasons for seeking private counsel. Furthermore, the court did not expressly address the impact of an adjournment on the court's schedule.
The colloquy in relevant part follows:
THE COURT: Mr. Klavens, we did conference this matter briefly yesterday, I believe, and you indicated that although you're standing in as co-counsel, that its likely that you're not going to make it through the full extent of this trial. You may be deployed prior to the conclusion of this trial?
MR. KLAVENS: yes, that's correct Judge.
THE COURT: Okay. That being said, however youif you want to stand in as co-counsel that's fine. I just didn't know whether or not there's going to be any requests for me to advise the jury as to why you're automatically absent or how counsel wants to address that or you're just no longer here and we don't touch on it. I just want to make sure we're all clear as to how we're going to handle that situation?
(Attorney discussion)
MR. KLAVENS: Your Honor, Mr. Kates has an objection and that is he's not comfortable, I guess, changing attorneys midstream or having the jury see *934 me for part of the time and then seeing me leave for the rest of the time. He feels it's not fair to him. He'shas concerns that the jury would be confused. So, I'm not sure what to do at this point.

THE COURT: Any proposals? I mean, what's your suggestion? Iis Ms. Stanfield going to be primarily handling this case and you're going to be assisting?
MR. KLAVENS: Yes, Your Honor.
MS. STANFIELD: Yes, Judge.
.... [discussion among counsel and court regarding instruction court would give to jury regarding Klavens's possible mid-trial absence]
THE COURT: Mr. Klavens?
MR. KLAVENS:Judge, through further discussion with Mr. Kates, Mr. Kates has also indicat[ed] that he's not comfortable, although Ms. Stanfield has my full faith and support and I know she's certainly capable of handling this case, Mr. Kates feels that becausein terms of time, she's newer to the case than I am. He feels that the lack of the time on the case by Ms. Stanfield is not to his benefit. He's not comfortable at this point. so, again, I don't knowI just want to put that on the record that that's Mr. Kates' position.
THE COURT: Thank you and you've workedMr. Klavens, you've worked with Ms. Stanfield with this file and in your opinion Ms. Stanfield is prepared and ready to proceed and Ms. Stanfield I would ask you the same question. This is something that's been anticipated. Ms. Stanfield is going to be trying this case with you for some quite time, is my understanding. I could be wrong about that, I don't know.
MR. KLAVENS: Judge, this iswe have worked together on this case and I'm sure she's ready and prepared. This is relatively new to Mr. Kates the fact that I'm going to be not here. This isthe last time I spoke with Mr. Kates was on Friday, I think, and some of this has developed since that time. So, this is new to Mr. Kates.

THE COURT: Fair enough. What we're going to do is, we are going to proceed with the trial. I certainly trust Mr. Klavens' representation, and Ms. Stanfield hasn't indicated in any way orMr. Kates, let me explain to you how this is going to work. I want to give youI'm going to give you every opportunity to consult with your attorneys throughout the trial. It's just important that because when we're on the record
....
THE COURT:.... [A]s I was saying, I'm comfortable that Ms. Stanfield's ready to proceed. Mr. Klavens has indicated Ms. Stanfield has been aware of this and is ready to proceed, as well.
With regard to the issue as to Mr. Klavens leaving in the middle of the trial, I'm going to tell the jury subject to hearing from Mr. Klavens as to any limitations that I might have, the truth, which is that Mr. Klavens has anticipate[d] he's going to receive orders to be deployed towhatever you suggest I I'm not exactly sure what I can say, Mr. Klavens. I'm just going to tell them the truth with the limitations that you recommend.
MR. KLAVENS: I willI can't
THE COURT: And that it's not anticipated
MR. KLAVENS:I think you can
THE COURT:that he's going to complete the trial but we're not sure.
.... [additional discussion regarding proposed instruction to jury regarding Klavens's anticipated absence]

*935 THE COURT: Mr. Kates is standing. Mr. Klavens, do you want to or Ms. Stanfield do you want to see what Mr. Kates
(Attorney/client discussion)
MR. KLAVENS: Mr. Kates is stating that, you know, the instruction is fine because the jury will look favorable towards the attorney, but not necessarily favorable towards him. He indicates that he's working now and that if he israther than have me as his attorney being removed during the middle of the trial, he's requesting a postponement so he can hire his own attorney. Is that right?

MR. KATES: Yeah.
THE COURT: That'sI understand that request. I am denying that request. We are going to proceed with the trial today. Okay. With regards to other issues, I would indicate that that may be considered a change in circumstances if the counsel wants to discuss any type of resolution if there is a resolution, but I'll leave that to counsel during any recess that we have.
[(Emphasis added).]
After denying the continuance, the court addressed other preliminary matters and began jury selection mid-morning. The court advised the prospective jurors that the trial itself would proceed on July 28 and 29 and continue Tuesday through Thursday, August 10 to 12, and if necessary, deliberations would continue August 13. The record does not reflect when the court decided testimony would be heard during the week of July 27; as noted above, on July 19, the court proposed to begin testimony on August 10.
Before jury selection continued July 28, Ostrowski reported to the court that plea negotiations, which the court had authorized the day before, were unsuccessful. Defendant reportedly was willing to enter an open plea[4] to a third-degree charge, but the State was only willing to accept an open plea to the indictment, conditioned on the State not moving for an extended term.
Jury selection concluded July 28, and the jury was sworn at the start of the morning's proceedings July 29. Stanfield and Ostrowski delivered opening statements, and the State presented its case and rested before the day's end, with Stanfield conducting all cross-examination. The court then adjourned until August 10, when defendant testified, with Stanfield conducting the direct and redirect examination. Stanfield and Ostrowski delivered summations, and deliberations began the same day. According to the record, Klavens was present in court, but his on-the-record participation was limited to sidebar conferences. The record does not reflect the extent to which he consulted with or guided Stanfield. Deliberations continued August 11 and the jury reported its verdict early on August 12.
Defendant raises the following points on appeal:
POINT I
DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO COUNSEL OF CHOICE WHEN THE JUDGE ARBITRARILY REFUSED HIS REQUEST FOR A CONTINUANCE TO RETAIN PRIVATE COUNSEL.
POINT II

*936 TRIAL COUNSEL WAS INEFFECTIVE IN ALLOWING JURORS TO LEARN ABOUT KATES'S DRUG USE DURING VOIR DIRE. (Not raised below).
POINT III
DUE TO THE JUDGE'S IMPROPER DOUBLE-COUNTING AND ERRONEOUS FINDING THAT THE OFFENSE WAS "PARTICULARLY EGREGIOUS," DEFENDANT WAS SENTENCED TO A MANIFESTLY EXCESSIVE EXTENDED TERM OF 15 YEARS AS A PERSISTENT OFFENDER, RATHER THAN A SENTENCE AT OR BELOW THE MID-POINT.

II.
Several legal principles inform our decision that the court denied defendant his constitutional right to the counsel of his choice, which is a structural error requiring reversal.
A defendant's right under the Sixth Amendment "to have the Assistance of Counsel for his defence[,]" U.S. Const., amend. VI, entitles "a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144, 126 S.Ct. 2557, 2561, 165 L.Ed.2d 409, 417 (2006). See also Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158, 162 (1932) ("the right to counsel being conceded, a defendant should be afford a fair opportunity to secure counsel of his choice"). In other words, the Sixth Amendment "commands ... that the accused be defended by the counsel he believes to be best." Gonzalez-Lopez, supra, 548 U.S. at 146, 126 S.Ct. at 2562, 165 L.Ed.2d at 418. See also Jacobson v. Jacobson, 151 N.J.Super. 62, 67, 376 A.2d 558 (App.Div. 1977) (construing New Jersey Constitutional right to counsel, N.J. Const. art. I, ¶ 10, to encompass "right of an accused to secure counsel of his own choice").
However, an indigent defendant who is represented by appointed counsel does not enjoy a right to choose counsel. State v. Williams, 404 N.J.Super. 147, 170, 960 A.2d 805 (App.Div.2008), certif. denied, 201 N.J. 440, 991 A.2d 229 (2010). The Office of the Public Defender retains the flexibility to substitute one attorney from its office for another. State v. Cooper, 410 N.J.Super. 43, 75, 979 A.2d 792 (App. Div.2009), certif. denied, 201 N.J. 155, 988 A.2d 1177 (2010). See also Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (court did not deny an indigent defendant his right to counsel when it refused a continuance to allow the originally assigned public defender to recover from surgery, and compelled the defendant to proceed with a newly appointed defender).
A non-indigent defendant who is erroneously or arbitrarily denied the constitutional right to counsel of his or her choice need not show prejudice to obtain reversal of a conviction.
Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.
[Gonzalez-Lopez, supra, 548 U.S. at 148, 126 S.Ct. at 2563, 165 L.Ed.2d at 419.]
See also United States v. Smith, 618 F.3d 657, 667 n. 2 (7th Cir.2010); United States v. Voigt, 89 F.3d 1050, 1074 (3d Cir.1996); Bland v. California, 20 F.3d 1469, 1478 (9th Cir.1994), overruled on other grounds Schell v. Witek, 218 F.3d 1017, 1025 (9th *937 Cir.2000); United States v. Panzardi Alvarez, 816 F.2d 813, 818 (1st Cir.1987); Wilson v. Mintzes, 761 F.2d 275, 281 (6th Cir.1985); United States v. Burton, 584 F.2d 485, 491 n. 19 (D.C.Cir.1978), cert. denied, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979).
Deprivation of counsel of choice is considered a "structural error" not subject to harmless error analysis because the consequences of deprivation are "necessarily unquantifiable and indeterminate." Gonzalez-Lopez, supra, 548 U.S. at 150, 126 S.Ct. at 2564, 165 L.Ed.2d at 420 (internal quotation and citation omitted). In that respect, deprivation of counsel of choice is on a par with deprivation of the right to counsel, Id. at 148-49, 126 S.Ct. at 2564, 165 L.Ed.2d at 419-20 (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); State v. Purnell, 161 N.J. 44, 61, 735 A.2d 513 (1999), and the right to represent oneself. Gonzalez-Lopez, supra, 548 U.S. at 149, 126 S.Ct. at 2564, 165 L.Ed.2d at 420 (citing McKaskle v. Wiggins, 465 U.S. 168, 177-78, n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984)); State v. King, 210 N.J. 2, 22, 40 A.3d 41 (2012).
However, the right to counsel of one's choice is not absolute. For example, a trial court retains "wide latitude in balancing the right to counsel of choice ... against the demands of its calendar." Gonzalez-Lopez, supra, 548 U.S. at 152, 126 S.Ct. at 2565-66, 165 L.Ed.2d at 421. See also Slappy, supra, 461 U.S. at 11, 103 S.Ct. at 1616, 75 L.Ed.2d at 619-20. A court's "scheduling and other decisions ... [may] effectively exclude a defendant's first choice of counsel." Gonzalez-Lopez, supra, 548 U.S. at 152, 126 S.Ct. at 2566, 165 L.Ed.2d at 422. A defendant's right to choose counsel is also circumscribed by the court's power to guard against conflicts of interest, and to vindicate the court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160, 108 S.Ct. 1692, 1698, 100 L.Ed.2d 140, 149 (1988).
A court may exercise broad discretion in controlling its calendar. "The determination of whether the motion for substitution of counsel should be granted is within the discretion of the trial judge and the judge is entitled to take into account the countervailing state interest in proceeding on schedule." State v. Ortisi, 308 N.J.Super. 573, 588, 706 A.2d 300 (App.Div.), certif. denied, 156 N.J. 383, 718 A.2d 1212 (1998). When assessing a continuance request to retain counsel, "the trial court must strike a balance between its inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice, on the one hand, and the defendant's constitutional right to obtain counsel of his own choice, on the other." State v. Furguson, 198 N.J.Super. 395, 402, 487 A.2d 730 (App.Div.), certif. denied, 101 N.J. 266, 501 A.2d 933 (1985).
This balancing involves "an intensely fact-sensitive inquiry." State v. Hayes, 205 N.J. 522, 538, 16 A.3d 1028 (2011). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 931 (1964).
In exercising its discretion, our Court has held that a trial court should consider the several factors we identified in Furguson, supra, which in turn adopted the analysis *938 of the Court of Appeals in Burton, supra:
Some of the factors to be considered in the balance include: the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
[Hayes, supra, 205 N.J. at 538, 16 A.3d 1028 (quoting Furguson, supra, 198 N.J.Super. at 402, 487 A.2d 730 (quoting Burton, supra, 584 F.2d at 490-91)).]
However, the availability of "other competent counsel," a factor in the analysis, is no substitute by itself for the constitutional right to choose counsel. "To argue otherwise is to confuse the right to counsel of choicewhich is the right to a particular lawyer regardless of comparative effectivenesswith the right to effective counselwhich imposes a baseline requirement of competence on whatever lawyer is chosen or appointed." Gonzalez-Lopez, supra, 548 U.S. at 148, 126 S.Ct. at 2563, 165 L.Ed.2d at 419. See also Fuller v. Diesslin, 868 F.2d 604, 610 (3d Cir.1989) (stating "it should not be enough for the government to demonstrate availability of other competent counsel to defeat the defendant's request for particular counsel"). As our Court recognized in connection with the denial of the closely related right to self-representation, "[d]efendant may have been represented by a skilled attorney ... that matters not". King, supra, 210 N.J. at 22, 40 A.3d 41.
Likewise, the factor pertaining to "prejudice to defendant's case" must be squared with the Gonzalez-Lopez holding that "it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." Gonzalez-Lopez, supra, 548 U.S. at 148, 126 S.Ct. at 2563, 165 L.Ed.2d at 419. The Court of Appeals in Burton, supra, explained, "A showing of prejudice to the defendant's case is not a prerequisite to the granting of a continuance." 584 F.2d at 491 n. 19. Rather, it is pertinent to consider possible prejudice because a finding of prejudice "would lend weight toward granting the requested continuance." Ibid.
Thus, a constitutional deprivation occurs only when the court mistakenly exercises its discretion and erroneously or arbitrarily denies a continuance to retain chosen counsel. "[O]nly an unreasoning and arbitrary `insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Slappy, supra, 461 U.S. at 11-12, 103 S.Ct. at 1616, 75 L.Ed.2d at 620 (quoting Ungar, supra, 376 U.S. at 589, 84 S.Ct. at 849, 11 L.Ed.2d at 931). See also Hayes, supra, 205 N.J. at 538, 16 A.3d 1028 (requiring "misuse of judicial discretion" to overturn denial of continuance to retain counsel).
Our Court has recognized that abuse of discretion "defies precise definition." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571, 796 A.2d 182 (2002). In the *939 context of a request for a continuance, our Court defined judicial discretion as the
exercise between the doing and the not doing of a thing which cannot be demanded as an absolute legal right, guided by the spirit, principles and analogies of the law, and founded upon the reason and the conscience of the judge, to a just result in the light of the particular circumstances of the case.
[Hayes, supra, 205 N.J. at 539, 16 A.3d 1028 (quotation and citation omitted).]
See also State v. Daniels, 38 N.J. 242, 249, 183 A.2d 648 (1962) (stating when a decision is left to a court's discretion, what is meant is "discretion founded on the facts and the applicable law and not simply an undisciplined whim").
We do not read Hayes, supra, to require proof of harmful error to establish an abuse of discretion, notwithstanding the Court's general statement that a discretionary decision shall be reversed only if the judicial action is "`clearly unreasonable'" and the "`ruling must have resulted prejudicially to the rights of the party complaining.'" 205 N.J. at 539, 16 A.3d 1028 (quoting Smith v. Smith, 17 N.J.Super. 128, 132-33, 85 A.2d 523 (App.Div. 1951), certif. denied, 9 N.J. 178, 87 A.2d 387 (1952)). Hayes was forced to prosecute a motion to withdraw his guilty plea without representation, because his prior attorneys had conflicts and the trial court denied a continuance to permit him to retain new counsel. The Court held "the denial of defendant's request for an adjournment was unreasonable and prejudicial to defendant's rights." Id. at 540, 16 A.3d 1028. However, the Court used the phrase "prejudicial to defendant's rights" to refer to denial of the defendant's right to counsel, as opposed to any resulting harm in the proceeding itself.
Although the State in Hayes argued that any error in denying the adjournment was harmless because the defendant's withdrawal motion was meritless, the Court held the record was inadequate to determine if the absence of counsel caused harm in the proceeding itself. 205 N.J. at 540-41. Thus, proof of harmful error was not a prerequisite to relief in Hayes. That is consistent with the Court's prior holding that complete deprivation of counsel is a structural error that cannot be harmless. Purnell, supra, 161 N.J. at 60-61, 735 A.2d 513.
In other jurisdictions, where a trial court has summarily denied a request for an adjournment to retain counsel, without a reasoned analysis of the relevant factors, the denial has been deemed arbitrary, warranting correction. For example, in affirming the issuance of a writ of habeas corpus, the Third Circuit held that a New Jersey defendant was denied his constitutional right to counsel of his choice when the court summarily denied a continuance. Fuller, supra, 868 F.2d at 611. Although the defendant proposed to retain out-of-state attorneys, the issue was not the pro hac vice rule then in effect, but the impact of the attorneys' involvement on the administration of justice. Id. at 607, n. 3. The Third Circuit held, "[T]he trial court's wooden approach and its failure to make record-supported findings balancing the right to counsel with the demands of the administration of justice resulted in an arbitrary denial of Fuller's motion[.]" Id. at 611. In a subsequent case, the Third Circuit explained that the nature of the inquiry and findings may vary according to the circumstances; nonetheless, a trial court may not arbitrarily rely on generalizations, speculation, or determinations lacking a basis in fact or reason. Voigt, supra, 89 F.3d at 1075.
In United States v. Nguyen, 262 F.3d 998 (9th Cir.2001), the Court of Appeals reversed a conviction because the trial *940 court arbitrarily denied the defendant a continuance on the first day of trial. The defendant sought the continuance to enable him to retain an identified private attorney to substitute for an assigned federal public defender. The defendant complained his assigned attorney was not well-prepared, and had not adequately consulted with him about the case. The private attorney reported to the court that the defendant's family was prepared to retain him, but that he could not take the case if it proceeded as scheduled. The judge did not consider the length of delay that would have been necessary, and flatly denied the defendant's request for a continuance without stating reasons.
The appeals court acknowledged that trial judges "have broad latitude to deny a motion for substitution of counsel on the eve of trial when the request would require a continuance." Id. at 1003. However, a court "should summarize in the record its reasons for the denial." Ibid. (internal quotation and citation omitted). It is not enough to repeat simply "your request is denied." Ibid. Moreover, the court's confidence in the assigned counsel's competence was no substitute for the exercise of defendant's rights. "The issue in this case is the attorney-client relationship and not the comfort of the court or the competency of the attorney." Id. at 1004.
Other jurisdictions have likewise found denial of the right to counsel of one's choice where the trial court did not engage in a reasoned analysis of the facts. See, e.g., Panzardi Alvarez, supra, 816 F.2d at 817 ("rote application" of rule denying appearance of chosen out-of-state attorney was an abuse of discretion denying constitutional right to attorney of choice); Smith, supra, 618 F.3d at 666 (trial court's denial of continuance erroneous where no trial had been set before request); State v. Goldsberry, 419 Md. 100, 18 A.3d 836, 850 (2011) (stating that court must make "evidence based findings" and "record must reflect that the trial court contemplated relevant factors" in balancing right to one's counsel of choice against, in that case, interest in enforcing conflict rules).
By contrast, where the trial court has engaged in a reasoned balancing of factorsincluding a defendant's lack of diligence, the failure to assert the financial capacity to retain private counsel, and a demonstrated inconvenience to the court or witnesseswe have affirmed the court's exercise of discretion in denying a continuance. In Furguson, supra, we affirmed a trial court's denial of a day-of-trial request for a continuance to allow private counsel, retained eleven days earlier, to substitute for a public defender. 198 N.J.Super. at 405-06, 487 A.2d 730. The trial court recited that witnesses were present in court; private counsel did not notify the court of his need for a continuance until the day of trial; and the court would have had no other cases to try. Ibid.
Likewise, in State v. McLaughlin, 310 N.J.Super. 242, 260, 708 A.2d 716 (App. Div.), certif. denied, 156 N.J. 381, 718 A.2d 1210 (1998), we found no abuse of discretion where a trial court denied an eve-of-trial request for a continuance to seek private counsel. The defendant failed to justify his delay, private counsel was not yet retained, and the defendant's professed capacity to hire private counsel was questionable and at odds with his prior claim of indigency. Ibid. "[A] defendant must act with reasonable diligence when exercising the right to choose his or her own counsel." Id. at 259, 708 A.2d 716. Moreover, the purported conflict with his appointed counsel that prompted the defendant's desire for private counselthe fact that his "defense counsel was being paid by the State and the State was also prosecuting him"was one obvious from the start of *941 the case. Id. at 257, 708 A.2d 716. See also State v. McCombs, 171 N.J.Super. 161, 165, 408 A.2d 434 (App.Div.1978) (no abuse of discretion denying continuance on eve of trial to hire private counsel to replace assigned counsel where the defendant did not act "with reasonable diligence" and there was no representation regarding financial capacity) aff'd o.b., 81 N.J. 373, 408 A.2d 425 (1979); State v. Reddy, 137 N.J.Super. 32, 35, 347 A.2d 545 (App.Div.1975) ("reasons on the record fully justify the exercise of ... discretion in denying the application for adjournment" where request made without diligence or representation of financial capacity).
Applying these principles, we conclude the trial court did not adequately elicit facts and apply the relevant factors to reasonably balance defendant's desire to retain counsel of his choice against the court's need to proceed with the scheduled trial. The court's only expressed basis for denying the requested continuance was its satisfaction, based solely on Klavens's assurance, that Stanfield was prepared to try the case in Klavens's absence. As we have observed, the availability of competent counsel may not replace the right to choose one's own counsel. Gonzalez-Lopez, supra, 548 U.S. at 148, 126 S.Ct. at 2563, 165 L.Ed.2d at 419.
Defendant undisputedly was surprised by the news on the first day of jury selection that his long-standing assigned counsel expected to be deployed and would no longer be his lead counsel. While defendant certainly had no right to dictate the assignment of another assistant deputy public defender, he retained the constitutional right, albeit not absolute, to hire private counsel of his choice. His eve-of-trial decision to exercise that right could hardly be attributed to a lack of diligence of the sort present in McLaughlin, Furguson, McCombs, and Reddy. The judge recognized the deployment orders were a changed circumstance. Moreover, defendant was requesting flexibility in a trial schedule that had been set only one week earlier and had already been adjusted to accommodate the needs of the State and Stanfield.
Under the circumstances, it was incumbent upon the court to inquire of defendant himself, to determine the length of the requested delay, Hayes, supra, 205 N.J. at 538, 16 A.3d 1028 (factors include "length of the requested delay"); and to assess whether defendant's request was made in good faith, ibid. (factors include "whether the requested delay is ... dilatory, purposeful, or contrived"). The court also did not inquire regarding defendant's financial capacity to retain private counsel. With the benefit of hindsight, we note defendant testified at trial that he was employed as a union construction worker. Moreover, he or friends or family were able to post bond of $50,000, according to the record. That also distinguishes defendant's case from McLaughlin, McCombs, and Reddy, in which financial capacity was questioned.
The court should also have given defendant an opportunity, in camera if necessary, to amply explain his concerns, to which Klavens alluded, that Stanfield was new to the case and may not have been as prepared as Klavens.[5] Defendant was not obliged to demonstrate prejudice from denial of counsel of his choice, as we have explained at length. But, a showing that defendant would be prejudiced by the change in counsel would have added *942 "weight" to his request. Burton, supra, 584 F.2d at 491 n. 19. The court did not expressly consider Stanfield's originally intended role before Klavens received his orders. See Hayes, supra, 205 N.J. at 538, 16 A.3d 1028 (factors include "whether the other counsel was retained as lead or associate counsel").[6]
The court also made no findings regarding the imperatives of its calendar. We do not know whether other cases were available for the court to try, nor the impact of a continuance on the State and its witnesses, as the court did not inquire whether the State objected to the continuance. Perhaps, it would have been feasible for the court and the State to delay jury selection until August 10, and continue the trial thereafter, giving defendant two weeks to retain private counsel. Although two weeks is a short period, the case was not complex. Even if defendant wanted more time, the court conceivably may have granted a continuance for less. See Burton, supra, 584 F.2d at 491, n. 13 ("A motion for a continuance may not properly be denied on the [s]ole ground that the time sought is longer than necessary... since unjustifiably long requests for continuances, if otherwise reasonable, can simply be granted for a shorter period of time.").
Finally, we do not mean to imply that a defendant's continuance request need necessarily trigger an extensive or time-consuming factual inquiry to elicit information essential to an appropriate exercise of discretion. We do not envision that the inquiries required in this case would have been lengthy or burdensome. Moreover, we can imagine facts that conceivably would have justified the discretionary denial of defendant's continuance request here, based on the factors we identified in Furguson and our Supreme Court endorsed in Hayes. However, it is not for us to speculate. It was incumbent upon the trial court to develop that record, and to apply those factors.
As the trial court's error is not subject to a harmless error analysis, Gonzalez-Lopez, supra, defendant is entitled to a new trial. Finally, in light of our decision, we do not reach defendant's remaining arguments.
Reversed and remanded.
NOTES
[1] The State agreed before trial that defendant's 1973 robbery conviction and 1993 sexual assault conviction were too remote to be used for impeachment.
[2] The court acknowledged that Klavens had informed the court of his anticipated deployment during a brief conference the day before. However, we have not been provided a transcript of that conference and apparently defendant was not present.
[3] During trial, defendant testified that he was employed as a construction worker through Local 415.
[4] An "open plea" was one that did not include a recommendation from the State, nor a prior indication from the court, regarding sentence. See State v. McDonald, 209 N.J. 549, 552, 39 A.3d 171 (2012).
[5] We do not intend to convey criticism of Stanfield's level of preparation or skill, as we do not reach defendant's challenge to her effectiveness at trial. See infra. We do note that she succeeded at trial in obtaining acquittals on the counts charging aggravated assault and resisting arrest by use of force or violence.
[6] Privately retained counsel may have been able to assist defendant in resolving the case by a plea, once the court waived the plea cut-off and allowed renewed plea negotiations. See Gonzalez-Lopez, supra, 548 U.S. at 150, 126 S.Ct. at 2564, 165 L.Ed.2d at 421 ("[T]he choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial."); United States v. Laura, 607 F.2d 52, 56 (3d Cir. 1979) (discussing the impact of defendant's exercise of right to choose counsel on defendant's decision to mount a defense).