**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3096-17T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

DENNIS WHITE,

    Defendant-Respondent.

_____

Submitted October 17, 2019 – Decided January 31, 2020

Before Judges Nugent and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 17-01-0031.

Joseph E. Krakora, Public Defender, attorney for appellant (Amira Rahman Scurato, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jennifer E. Kmieciak, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant, Dennis White, pled guilty to second-degree aggravated assault and was sentenced to a ten-year prison term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2(a). On appeal, he argues:

> POINT I
> THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.
>
> POINT II
> DEFENDANT'S RIGHT TO COUNSEL OF HIS CHOICE WAS VIOLATED.
>
> POINT III
> DEFENDANT'S SENTENCE IS EXCESSIVE.

Finding no abuse of discretion in the trial court's denial of defendant's motions to withdraw his plea and obtain new counsel, and finding no error in the sentencing proceeding, we affirm.

## I.

### A.

Police charged defendant in a June 6, 2016 Complaint-Warrant (the first complaint-warrant) with aggravated assault, N.J.S.A. 2C:12-1(b), and arrested him two days later. Bail was set at $100,000. A Salem County grand jury subsequently charged defendant in a single-count indictment with second-degree aggravated assault, N.J.S.A. 2C:12-1(b) (the first indictment).

Defendant moved to dismiss the first indictment, alleging the definition of serious bodily injury had not been read or explained to the grand jury. Rather than contest the issue, the State again presented the case to the grand jury and defined "serious bodily injury" for the jury's consideration. The grand jury returned a single count indictment, second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (the second indictment). The second indictment was filed in the Criminal Division on January 25, 2017. Following the second indictment, the State issued a second complaint-warrant on January 30, 2017, also charging defendant with aggravated assault. The State dismissed the first indictment. The trial court denied defendant's motion to dismiss the second indictment.

Because the second indictment and complaint-warrant occurred after January 1, 2017, the effective date of the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26, the State moved for defendant's pre-trial detention. The court granted the State's motion. By that time, defendant had been in jail seven months.

On November 13, 2017, defendant's trial was scheduled to begin. Rather than proceed to trial, he entered an open plea to the indictment's sole count.

A-3096-17T1

During defendant's plea colloquy, defendant said he had agreed to plead guilty to second-degree aggravated assault and understood he could receive a maximum of ten years in prison with eighty-five percent parole ineligibility. He also understood the State would not agree to a sentence recommendation but would agree not to seek an extended prison term, for which defendant was eligible as a persistent offender, N.J.S.A. 2C:44-3(a).

In response to the court's questions, defendant acknowledged that before entering the plea agreement he had reviewed the case with his attorney, discussed possible defenses, and discussed the probable outcome if he went to trial. The court explained the panoply of rights defendant would have if he went to trial. Defendant confirmed he understood that by pleading guilty he was giving up his right to have a trial and that was what he wanted to do.

Next, the court assured itself defendant was pleading guilty voluntarily:

> [Court]: Has anybody forced you or coerced you to plead guilty?
>
> [Defendant]: No.
>
> [Court]: Were any threats made to cause you to plead guilty?
>
> [Defendant]: No.

[Court]: Were any promises made?

[Defendant]: No.

[Court]: All right. You hesitated there for a moment. Were any promises made to cause you to plead guilty?

[Defendant]: No.

[Court]: Is there anything you need to talk to your attorney about before we proceed?

[Defense Counsel]: Any promises that aren't contained in the paperwork?

[Defendant]: No.

[Court]: Thank you . . . . Are you pleading guilty because you are guilty?

[Defendant]: Yes.

[Court]: I have the plea forms in front of me and you have a copy in front of you on the table. To begin with, they consist of five pages. On the fifth page, there is a signature next to the Defendant. Is that your signature?

[Defendant]: Yes.

[Court]: And all of the five pages have the initials D.W. in the lower right-hand corner. Did you put those initials there?

[Defendant]: Yes.

[Court]: Did you sign and initial these forms after reviewing them with your attorney?

A-3096-17T1

[Defendant]:  Yes.

[Court]:  The forms consist of a series of questions, where the answers are circled either yes or no.  Are the circled answers your answers?

[Defendant]:  Yes.

[Court]:  Are they based upon information that you discussed with your attorney?

[Defendant]:  Yes.

The court noticed defendant had not signed the NERA supplemental form. Defendant reviewed the form with his attorney, the judge explained it, and defendant signed it.

The judge told defendant that if he found defendant had knowingly and voluntarily entered the plea, it would be very difficult for defendant to withdraw it.  Defendant said that was not what he was told.  Defense counsel explained there was a case that set forth the factors necessary to reopen a guilty plea. Consequently, if the court found defendant knowingly and voluntarily entered the plea, defendant would have to show the factors to withdraw the plea.  The court added defendant would be unable to withdraw the plea if he simply changed his mind; he would have to talk about the factors in the case.

Next, defendant admitted that on the date of the offense, he argued with the victim while the two were inside a store.  They proceeded outside.

6

Defendant understood he and the victim would fight once outside. When the victim exited the store, defendant thought the victim was reaching for something, so defendant punched him several times. Defendant had reviewed the victim's medical records, which confirmed the victim had lost sight in his left eye as a result of the assault.

Defendant next acknowledged that he had discussed with plea counsel as well as his previous attorney the defense of self-defense. Defendant stated that he was waiving any right to assert self-defense to the charges.

## C.

During the two months between defendant's plea and sentence, he filed a motion to withdraw his plea. When he appeared for sentencing, he requested an adjournment to obtain new counsel. He explained, "my money has been tied up in paying [my counsel] and the bail . . . I can't afford private counsel anymore. I would like time to put in for a public defender to handle my case." Defendant handed the court a copy of a hand-written letter addressed to "Attention Bar Association," with no address. According to the hearing record, the letter purported to be defendant's complaint to a bar association about defense counsel, who defendant alleged was ineffective. Defendant told the court his counsel was constructively "fired."

7

The State objected to the adjournment and argued defendant's claim was a ploy to delay sentencing. Defendant's counsel noted that he was unaware of any ethical grievances filed against him but left the ultimate decision to the court. The court rejected defendant's request for an adjournment:

> The question is whether, at this very late moment in time, I should give you the opportunity to try to obtain other counsel.
>
> [Your counsel] is, in fact, the third attorney designated to represent you. There's no indication that this letter to the Bar Association has been filed anywhere. . . .
>
> I am greatly concerned by [the State's] concern, that this is merely an attempt to delay the hearing of the Motion [to withdraw the plea] and the imposition of sentence, whatever that might be.
>
> . . . .
>
> [B]ased on the record that I have before me . . . all of what you say, are facts that were known to you prior to your trial date and prior to the date that you decided to enter a plea of guilty. . . .
>
> [T]herefore, that this is merely a last[-]ditch attempt on your part to avoid having the sentencing proceeding go forward [your request] . . . is denied.

Once the request was denied, defendant's counsel proceeded to argue the motion to withdraw defendant's plea, asserting, among other things, a claim of self-defense. The court denied defendant's motion. The court rejected

A-3096-17T1

defendant's claim that he did not fill out the plea forms, did not know who filled them out, and did not understand the questions. The court noted that during the plea colloquy defendant testified under oath that he signed the forms and initialed each page, and said the answers on the plea forms were his. Defendant's assertion that he did not have adequate time to review the plea forms with his attorney was similarly refuted by the record.

The court found that the only pressure to which defendant might have been subjected was pressure every defendant faces when deciding to plead or go to trial: namely, the anxiety of a trial. Acknowledging that facing trial causes pressure and stress, the court found such pressure was not a basis for concluding a guilty plea was involuntary.

Next, the court addressed defendant's allegation that he was told he could go home if he pled guilty. The court pointed out that nothing in the record substantiated defendant's claim. The court certainly did not tell defendant that he would be free pending sentencing if he pled guilty. In summary, the court determined that each of defendant's allegations attacking the voluntariness of his plea was refuted by his testimony during the plea colloquy.

The court next addressed defendant's claim of self-defense. Although defendant claimed he punched the victim several times because he thought the

victim was reaching for something, defendant said nothing during the plea colloquy to suggest the victim took any action. Rather, defendant simply "thought" the victim was reaching for something.

The court explained that it had viewed the video of the assault in light of the legal elements of self-defense. The court summarized the events depicted in the video:

> Looking at the video, [and comparing it] to his claim that he saw the [victim] reaching for something, I'll make the following comments.
>
> It does appear from the video, which is a surveillance video, that Mr. White and a female entered the store on the day in question. Soon thereafter, the victim entered the store.
>
> It appears that Mr. White approached the victim. No idea why or what was said. The victim then went back to what looked like a deli counter and the camera is located back there and the camera points outward to the door/cash register area.
>
> And at some point, the female, from standing at the cash register, began to yell at the victim in this case. But I say she began to yell because, even though I couldn't hear what was being said, by her facial expressions and demeanor, it was clear that she was yelling at the victim.
>
> It did not appear that the victim said or did anything in response. He remained at the deli counter. Thereafter, Mr. White approached the victim and got

10

really close to him and was saying something. I don't know what it was.

The victim tried to turn away and each time the victim tried to turn away, Mr. White tried to get into his face. By that, I mean, he'd follow him around and try to talk directly in his face.

When that concluded, Mr. White and the female eventually left the store. The victim remained at the deli counter until they left. Then he went up to the cash register area.

It appears that he was delaying his exit of the store because he wandered around a little bit, went back to the deli counter area, went back to the cash register.

Was in line but other people got in front of him and checked out before he finally checked out and then he did, in fact, leave the store.

Looking at the surveillance video from the outside, it appears that Mr. White, when he left the store some three minutes before the victim left, went into, as [the State] said, the shadows of the building and that is clear from the video.

He went to the right side of the door. He stood in the shadows and waited and waited and waited. And when the victim left the store, the victim started walking away. He put his grocery bag down and immediately, Mr. White punched him.

The punch was forceful enough that the victim reeled and began walking away from Mr. White. Mr. White pursued him and punched him multiple times in the face until the victim fell to the ground.

A-3096-17T1

On those facts, I don't find he has a colorable claim of innocence. Those facts, if presented at trial, would in all likelihood not even entitle him to have the jury consider self-defense.

But I further find that if the jury did consider self-defense, no rational juror would conclude that the conduct of Mr. White was conduct that occurred by way of self-defense.

The court concluded defendant had not sustained his burden, in the first instance, to present a plausible basis for his request to withdraw his plea. The court sentenced defendant, and this appeal followed.

## II.

## A.

Defendant first argues the court erred by denying his motion to withdraw his guilty plea. Throughout his argument, defendant elides claims that his plea was involuntary with claims that the court abused its discretion by denying his motion to withdraw the plea under factors enumerated in State v. Slater, 198 N.J. 145, 155 (2009). Of course, a plea must be "made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea." R. 3:9-2.

A defendant's motion to withdraw a guilty plea "must be considered in light of the competing interests of the State and the defendant. . . .  The State's strong interest in that regard 'is in having criminal wrongdoers account and in the finality of that accounting.'"  Slater, 198 N.J. at 155 (quoting State v. Taylor, 80 N.J. 353, 365 (1979)).  In addition to the State's interest, "[t]he victims of an offense also have an obvious interest in the finality of criminal proceedings.  At the same time, defendants are entitled to 'fairness and protection of basic rights.'"  Ibid. (quoting Taylor, 80 N.J. at 365).

A defendant seeking to withdraw a plea has the burden "'in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits.'"  Id. at 156 (quoting State v. Smullen, 118 N.J. 408, 416 (1990)).  To meet this burden, a defendant "must show more than a change of heart . . . [or a] 'whimsical change of mind.'"  Id. at 157 (quoting State v. Huntley, 129 N.J. Super. 13, 18 (App. Div. 1974)).

When evaluating a defendant's motion to withdraw a plea, a trial court must consider four factors:  "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether the withdrawal

would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 157-58 (citing United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2002)).

Significantly, a defendant does not assert a colorable claim of innocence by making "[a] bare assertion of innocence." Id. at 158. Rather, a defendant "must present specific, credible facts and, where possible, point to facts in the record that buttress their claim." Ibid. "[C]ourts are not to conduct a mini-trial at this juncture, . . . [t]hey should simply consider whether a defendant's assertion of innocence is more than a blanket, bald statement and rests instead on particular, plausible facts." Id. at 159.

In addition to the legal principles concerning the voluntariness of guilty pleas and the factors relevant to their withdrawal, we are informed by the Supreme Court's admonition that,

> representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a "formidable barrier" which defendant must overcome before he will be allowed to withdraw his plea. Blackledge v. Allison, 431 U.S. 63, 74 (1977). That is so because "[s]olemn declarations in open court carry a strong presumption of verity." Ibid.; State v. DiFrisco, 137 N.J. 434, 452 (1994) . . ., cert. denied, 516 U.S. 1129, (1996).
>
> [State v. Simon, 161 N.J. 416, 444 (1999) (alteration in original).]

Defendant argues his plea was involuntary because he was in jail. He contends he remained in jail after his arrest because of the confusion concerning whether he was subject to bail or not following the filing of the second complaint and the effective date of the Criminal Justice Reform Act. The trial court did not err by rejecting this argument.

Defendant has cited no case for the proposition that being in jail is a coercive element that can undermine an otherwise valid guilty plea. If such were the case, any defendant incarcerated pending trial could assert his incarceration as a ground for setting aside an otherwise valid plea.

There are additional reasons the trial court properly rejected defendant's claim that his plea was involuntary because he was incarcerated. Defendant pled guilty on the day his trial was scheduled to begin. Had he not pled guilty, he would have gone to trial. Thus, there would have been no further time defendant would have spent in jail pending trial.

Another factor is defendant's clear and lucid testimony under oath during the plea colloquy that he was pleading guilty voluntarily, without coercion, and without any promises. Defendant does not claim anyone promised him that he would be released from jail pending sentencing if he pled guilty. His sworn statements to the contrary constitute a "formidable barrier" which he is unable

15

to overcome.  Ibid.  Defendant's remaining claims attacking the voluntariness of his plea are without sufficient bases or merit to warrant further discussion.  R. 2:11-3(e)(2).

We further conclude the trial court did not abuse its discretion by denying defendant's motion to withdraw his plea.  Of the four Slater factors, 198 N.J. at 157-58, defendant primarily emphasizes the first, that he asserted a colorable claim of innocence.  We disagree.

Defendant has not asserted that the trial court's explanation of what appears on the surveillance videos, inside and outside of the store where the incident occurred, is inaccurate.  Defendant's mere assertion that he thought the victim was reaching for something is entirely devoid of factual support.  The surveillance videos demonstrate no basis for such belief.  Defendant has failed to point to any evidence to support his subjective "thought."  In short, defendant has presented no "specific, credible facts" to support his claim, nor has he "point[ed] to facts in the record that buttress [his] claim."  Id. at 158.  Under these circumstances, the trial court acted well within its discretion in determining defendant had not satisfied the first Slater factor.

Additionally, defendant failed to satisfy the next two Slater factors.  Contrasting defendant's sworn testimony during the plea colloquy with the

mostly bald assertions he made in support of his motion to withdraw his plea readily exposes the weakness of his reasons for moving to withdraw his plea. See id. at 157-58. Thus, defendant has failed to satisfy the second Slater factor.

The third factor, the existence of a plea bargain, is present. Thus, even if the fourth factor—"whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused"—is resolved in his favor, the first three factors substantially outweigh the latter consideration. Thus, the trial court did not err by denying defendant's motion.

B.

Defendant next argues he was deprived of counsel of his choice when the judge denied his request for an adjournment and request for a public defender. We are unpersuaded by this argument.

A defendant's right under the Sixth Amendment "to have the Assistance of Counsel for his defense[,]" U.S. Const., amend. VI, entitles "a defendant who does not require appointed counsel to choose who will represent him." State v. Kates, 426 N.J. Super. 32, 43 (App. Div. 2012) (quoting U.S. v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006)). However, an indigent defendant who is represented by appointed counsel does not enjoy a right to choose counsel. State v. Williams, 404 N.J. Super. 147, 170 (App. Div. 2008). Deprivation of counsel

17

of choice is considered a structural error not subject to harmless error analysis because the consequences of deprivation are "necessarily unquantifiable and indeterminate." Kates, 426 N.J. Super. at 44 (quoting Gonzalez-Lopez, 548 U.S. at 150).

Nonetheless, the right to counsel of one's choice is not absolute. A trial court retains "wide latitude in balancing the right to counsel of choice . . . against the demands of its calendar." Id. at 45. When assessing a defendant's request for an adjournment to substitute counsel, "the trial court must strike a balance between its inherent and necessary right to control its own calendar and the public's interest in the orderly administration of justice, on the one hand, and the defendant's constitutional right to obtain counsel of his own choice, on the other." Ibid. (quoting State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985)). "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Ungar v. Sarafite, 376 U.S. 575, 589 (1964).

We review a trial court's decision to grant or deny such a request for abuse of discretion. "[A] trial court's decision to deny a request for an adjournment to

permit a defendant to retain counsel of his choice will not be deemed reversible error absent a showing of an abuse of discretion which caused defendant a 'manifest wrong or injury.'" State v. Hayes, 205 N.J. 522, 537-38 (2011) (quoting State v. McLaughlin, 310 N.J. Super. 242, 259 (App. Div. 1998)).

> Some of the factors to be considered in the balance include the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [Id. at 538 (quoting Furguson, 198 N.J. Super. at 402).]

Here, defendant requested the adjournment on the day he was to be sentenced. The court determined the request was not for legitimate reasons, but rather was contrived, a finding fully supported by defendant's transparently frivolous letter purporting to charge his attorney with ineffective assistance. Even on this appeal, defendant has offered no competent evidence to support

19

this unsupported assertion. Defendant had no other attorney who was prepared to proceed with even so much as the argument on his motion to withdraw his plea. The trial court's denial of defendant's request for an adjournment to have a fourth attorney appointed to represent him was hardly an abuse of discretion which caused defendant a manifest wrong or injury. Id. at 537-38.

### III.

In his final argument, defendant claims his sentence is excessive. When the court has followed the sentencing guidelines, and its findings of aggravating and mitigating factors are supported by the record, we will only reverse if the sentence "shock[s] the judicial conscience" in light of the particular facts of the case. State v. Roth, 95 N.J. 334, 364-65 (1984). Here, the trial court followed the sentencing guidelines and its findings of aggravating and mitigating factors are supported by the record. The sentence is not conscience shocking. Defendant's arguments to the contrary are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3096-17T1