# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2305-19T1

NEW JERSEY OF DIVISON
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

N.L.M,

     Defendant,

and

M.M,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF M.M.,
a minor.

_____

     Submitted November 16, 2020 – Decided December 22, 2020

     Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FG-01-0049-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Catherine Reid, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Denise M. Meyer, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant N.L.M (the father) appeals from a January 23, 2020 order terminating his parental rights to his daughter M.M. (the child), born in 2015, and awarding guardianship to the child's maternal grandparents. Sadly, both the child's father and mother have long suffered from opiate addictions.[1] The father also has a long history of criminal convictions and has been incarcerated or restricted to a halfway house for much of the child's life. He has shown little

---

[1] The mother voluntarily surrendered her parental rights to M.M. and two younger half-siblings in December 2019. The mother is not a party to this appeal.

interest in reunifying with his child, declining visitation opportunities and repeatedly refusing to accept court-ordered services to address his parenting failures. Judge W. Todd Miller presided over the guardianship trial, entered judgment, and rendered a comprehensive and detailed oral opinion. We affirm substantially for the reasons stated by Judge Miller on the record.

On appeal, the father argues:

POINT I

THE TRIAL COURT'S LEGAL CONCLUSIONS AS TO N.J.S.A. 30:4C-15.1(A) DID NOT FLOW FROM THE ESTABLISHED FACTS.

    A. THE TRIAL COURT'S LEGAL CONCLUSION THAT DCPP SATISFIED ITS BURDEN OF PROOF AS TO THE FIRST HALF OF N.J.S.A. 30:4C-15.1(A)(3) WAS NOT SUPPORTED BY THE RECORD WHERE DCPP MADE LITTLE EFFORT TO PROVIDE SERVICES TO [THE FATHER] UNTIL THE FINAL MONTHS PRIOR TO THE GUARDIANSHIP TRIAL AND ITS BELATED EFFORTS, WHICH ESSENTIALLY CONSISTED OF PROVIDING HIM WITH A FEW PHONE NUMBERS AND SCHEDULING A HOME STUDY FOR THE DAY OF TRIAL, CANNOT BE DEEMED "REASONABLE" WITHIN THE MEANING OF THE LAW.

    B. THE JUDGMENT SHOULD NOT BE AFFIRMED BECAUSE THE FAMILY PART'S CONSIDERATION OF ALTERNATIVES TO TERMINATION OF PARENTAL RIGHTS WAS BASED ENTIRELY ON HEARSAY REPRESENTATIONS ABOUT THE GRANDPARENTS' INTENT TO ADOPT, THE RELIABILITY OF WHICH WERE UNDERMINED BY THE DCPP RECORDS ADMITTED AT TRIAL.

A-2305-19T1

C. THE TRIAL COURT'S LEGAL CONCLUSION THAT DCPP SATISFIED ITS BURDEN OF PROOF AS TO N.J.S.A. 30:4C-15.1(A)(1) WAS NOT SUPPORTED BY THE RECORD WHERE DCPP PRESENTED NO EVIDENCE THAT THE DAUGHTER WAS HARMED—PHYSICALLY, EMOTIONALLY, OR PSYCHOLOGICALLY—BY [THE FATHER'S] INCARCERATION, LONG-DISTANCE PARENTING, OR PRIMARILY NON-CUSTODIAL STATUS.

D. THE TRIAL COURT'S LEGAL CONCLUSION THAT DCPP SATISFIED ITS BURDEN OF PROOF AS TO N.J.S.A. 30:4C-15.1(A)(2) WAS NOT SUPPORTED BY THE RECORD TO THE EXTENT IT ONCE AGAIN RELIED ON THE DAUGHTER'S FOUR YEARS WITH HER GRANDPARENTS AND THE ALLEGED FAILURE TO COMPLETE SERVICES THAT WERE NOT OFFERED.

E. THE TRIAL COURT'S LEGAL CONCLUSION THAT DCPP SATISFIED ITS BURDEN OF PROOF AS TO N.J.S.A. 30:4C-15.1(A)(4) WAS NOT GROUNDED IN THE RECORD WHERE THE COURT COULD NOT PROPERLY EVALUATE THE POSSIBILITY OF KLG, WHERE THE EXPERT'S CONCLUSION WAS BASED ON THE FALSE DICHOTOMY BETWEEN ADOPTION AND TERMINATION PRESENTING BY DCPP, AND WHERE THE COURT INACCURATELY ASSUMED AN ABRUPT TRANSITION TO INADEQUATE LIVING CONDITIONS.

1. A BEST INTEREST ANALYSIS CANNOT BE COMPLETE WHERE DCPP FAILED TO PRESENT EVIDENCE THAT KLG WAS ADEQUATELY EXPLORED AND UNEQUIVOCALLY REJECTED AND THIS LACK OF EXPLORATION SKEWED THE EXPERT REPORT.

4

2. THE COURT'S HOLDING THAT A RETURN TO THE FATHER WOULD BE HARMFUL DUE TO AN ABRUPT TRANSITION TO THE ALLEGED INADEQUACY OF THE FATHER'S LIVING ACCOMMODATIONS WAS NOT BASED ON THE RECORD EVIDENCE.

POINT II

FATHER ASKS THIS COURT TO VACATE THE JUDGMENT AND REMAND FOR A NEW TRIAL BECAUSE THE JUDGE ERRED IN DENYING HIS REQUEST FOR A POSTPONEMENT SO THAT HE COULD COMPLETE THE DCPP-REQUIRED, COURT-ORDERED ASSESSMENT NECESSARY FOR REUNIFICATION AS WELL AS ATTEND HIS OWN TRIAL.

I.

We begin by addressing the father's contention that the trial judge erred by denying a last-minute request to postpone the guardianship trial. The father did not appear on the first day of trial, January 21, 2020, despite having been given notice of the trial date. His counsel on that day sought an adjournment to await the results of a home assessment by child welfare authorities in Florida, where the father had relocated after the birth of his child.[2] Judge Miller denied

_____

[2] Counsel argued that the assessment was scheduled to be completed that same day and that defendant thus needed to be in Florida. On January 23, 2020, DCPP (the Division) presented evidence the father had been noncompliant with the home assessment process conducted in accordance with the Interstate Compact for Placement of Children (ICPC). Specifically, the ICPC case worker in Florida

A-2305-19T1

the adjournment request, reasoning that the father had been given notice of the trial date, the case was already two months beyond the six-month goal for convening guardianship trials, the father's time and financial cost of attending the proceedings was relatively de minimis, notwithstanding his current residence out-of-state, and the child's interests would be best served by proceeding with trial. We add that Judge Miller offered the father the opportunity to telephonically participate at the trial. However, the father's attorney was unable to receive an answer from his client that day.

Trial judges are afforded great latitude in controlling their calendars and making scheduling decisions. State v. Kates, 426 N.J. Super. 32, 45 (App. Div. 2012). Accordingly, the scope of our review of these decisions is narrow. In State v. Furguson, we recognized that "[t]he granting of a continuance necessarily rests within the sound discretion of the trial court, and the exercise of that discretion will not constitute reversible error in the absence of a showing of an abuse of discretion causing defendant a manifest wrong or injury." 198

---

commented that "[the father was] just playing games," and that he failed to present proof that he had submitted to urine testing and fingerprinting, which are prerequisites to the reunification home assessment process. We address the father's challenge to the admission of this information as substantive evidence at trial in Section II, infra. For present purposes, we note that the adjournment request was based on the need to await the results of an assessment the father refused to cooperate with.

A-2305-19T1

N.J. Super. 395, 402 (App. Div. 1985). In the present circumstances, we find no abuse of discretion in denying the last-minute request to postpone the trial. Nor has the father suffered a manifest wrong or injury. Even if he had attended trial, we believe the result would have been the same in view of the overwhelming evidence presented by the Division.

II.

The father contends the trial judge improperly admitted hearsay evidence documenting the efforts by Florida child welfare authorities to perform the home assessment and provide other reunification-related services pursuant to the ICPC. Because we affirm for the reasons explained in Judge Miller's thoughtful oral ruling on counsel's hearsay objection, we need not re-address the father's argument at length. We add only the following remarks.

A trial court's evidentiary decisions are reviewed under the abuse of discretion standard. N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 366 (2017). This includes hearsay rulings. Ibid. See also Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 379 (2007). The danger of hearsay, moreover, is mitigated in a bench trial. Accordingly, an appellant challenging a trial court's decision to admit hearsay "faces an especially high hurdle in an

appeal from a civil bench trial" to demonstrate reversible error. <u>N.J. Div. of Child Prot. & Permanency v. J.D.</u>, 447 N.J. Super. 337, 349 (App. Div. 2016).

As we have noted, the ICPC case worker report in question was in fact originally requested by the father's counsel, who urged that the guardianship trial be adjourned until that information could be presented to the court. The father now contends it was inappropriate for the court to consider that same information once it became available. Judge Miller determined that the information provided by the Florida caseworker was reliable. <u>See</u> <u>In re Guardianship of Cope</u>, 106 N.J. Super. 336, 343–44 (App. Div. 1969) (holding that State case worker reports "supply a high degree of reliability as to the accuracy of the facts contained therein."). Judge Miller also found that it was not feasible to have the out-of-state caseworker travel to New Jersey to relate the information in person at trial.

We are satisfied in these circumstances the trial judge did not abuse his discretion in admitting the information under <u>N.J.R.E.</u> 804(a)(4) (providing a hearsay exception where a declarant is unavailable, and their attendance cannot be procured by "reasonable means."). We add that even without this evidence, the Division presented other evidence at trial that overwhelmingly proved the grounds for terminating the father's parental rights.

A-2305-19T1

The father contends the Division failed to satisfy its burden at the guardianship trial. We disagree. We begin our analysis by acknowledging certain foundational principles that govern this appeal. There exists a well-settled legal framework regarding the termination of parental rights. A parent has a constitutional right to raise his or her biological child, which "is among the most fundamental of all rights." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 447 (2012) (citing N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 102 (2008)); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). However, that right is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992).

To effectuate these concerns, the Legislature created a multi-part test to determine when it is in the child's best interest to terminate parental rights. Specifically, N.J.S.A. 30:4C-15.1(a) requires the Division to prove four prongs by clear and convincing evidence:

(1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;

(2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from [her] resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The Division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

See also A.W., 103 N.J. at 604–11. The four prongs of the test are "not discrete and separate," but rather "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that addresses the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139 (1993)). The trial court must consider "not only whether the parent is fit, but also whether he or she can become fit within time to assume the parental role necessary to meet the child's needs."

N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 87 (App. Div. 2006) (citing J.C., 129 N.J. at 10). When applying the best-interests test, moreover, a trial court must pay careful attention to a child's need for permanency and stability without undue delay. In re Guardianship of D.M.H., 161 N.J. 365, 385–86 (1999).

Our review of a family judge's factual findings in a guardianship trial is limited. In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002). Findings by a Family Part judge are "binding on appeal when supported by adequate, substantial, and credible evidence." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). We may reverse a factual finding only if there is "'a denial of justice' because the family court's 'conclusions are [] "clearly mistaken" or "wide of the mark."'" Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (alteration in original) (quoting E.P., 196 N.J. at 104). Accordingly, an appellate court should not disturb the trial court's factfinding unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 413 (quoting Rova Farms, 65 N.J. at 484). "[T]he conclusions that

logically flow from those findings of fact are, likewise, entitled to deferential consideration upon appellate review." R.L., 388 N.J. Super. at 89.

The father argues that the Division in this case failed to prove any of the prongs of the best-interests test. After carefully reviewing the record in light of the applicable legal principles, we conclude that the Division proved all four prongs by clear and convincing evidence. We do so substantially for the reasons given by the judge. We add the following remarks with respect to each prong.

A.

The father argues that Judge Miller erred in finding that the child was physically, emotionally, or psychologically harmed by his behavior. The father's argument misperceives both the nature of the harm contemplated in the best-interests test and the nature and strength of the evidence that was presented by the Division.

Under the first prong of the best-interests test, the trial court examines the effect of the harm that stems from the parent-child relationship over time. N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 506 (2004). It may consider both physical and psychological harm and, therefore, may base its termination decision on emotional injury in the absence of physical harm. See In re Guardianship of R., 155 N.J. Super. 186, 194 (App. Div. 1977) ("The absence

of physical abuse or neglect is not conclusive on the issue of custody. The trial court must consider the potential for serious psychological damage to the child inferential from the proofs."). Furthermore, and of special significance in this case, "[a] parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." D.M.H., 161 N.J. at 379 (citing K.H.O., 161 N.J. at 352–54). Indeed, it is well-established that a parent's "persistent failure to perform any parenting functions and to provide nurture, care, and support" to a child is "a parental harm to that child arising out of the parental relationship" under the statute. Id. at 380 (citing K.H.O., 161 N.J. at 352–54). Stated differently, "[s]erious and lasting emotional or psychological harm to children as the result of the action or inaction of their biological parents can constitute injury sufficient to authorize the termination of parental rights." In re Guardianship of K.L.F., 129 N.J. 32, 44 (1992) (emphasis added) (citing J.C., 129 N.J. at 18).

In this instance, Judge Miller observed that the father had been incarcerated for a total of twenty-three months since his child's birth—that is, for nearly half of her life. Additionally, the judge found that the father "never reached sobriety" and did not complete his substance abuse treatment or court-ordered services. Accordingly, Judge Miller concluded that prong one was

established by clear and convincing evidence of the father's incarceration, his recurrent substance abuse, and his failure to complete court-ordered services needed to break the cycle of addiction and criminality. Judge Miller further found that the father's persistent failure to perform parenting functions—resulting in near-total absence from the child's life—was also underscored by his choice not to accept the Division's offer to arrange supervised visitation during his periods of incarceration, and his subsequent choice not to accept the Division's offer to arrange for him to travel to New Jersey at the Division's expense for supervised visitation after he moved to Florida. We deem it to be especially important, moreover, that in making his findings regarding harm to the child, Judge Miller relied upon the credible expert testimony of the clinical psychologist who examined both father and child. We see no reason to disturb these findings, which are well-supported by substantial credible evidence in the record.

B.

We likewise reject the father's argument that Judge Miller erred in finding that harm to the child would continue to occur. The second prong of the best-interests test requires the Division to present clear and convincing evidence that "[t]he parent is . . . unable or unwilling to provide a safe and stable home for the

child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). "The court considers not only 'whether the parent is fit, but also whether he or she can become fit within time to assume the parental role necessary to meet the child's needs." N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 483 (App. Div. 2012) (quoting R.L., 388 N.J. Super. at 87 (App. Div. 2006)). As noted, the first and second prongs are closely related, and often, "evidence that supports one informs and may support the other as part of the comprehensive basis for determining the best interests of the child." D.M.H., 161 N.J. at 379.

The second prong can be proved in two alternative ways. K.H.O., 161 N.J. at 352. First, the Division can show that it is reasonably foreseeable that the parent will not or cannot cease to inflict harm upon the child. A.W., 103 N.J. at 606–07, 615–16. This can be established by proving parental "dereliction and irresponsibility," which can be shown by proof of continued substance abuse, the inability to provide a stable home, and the withholding of nurturing and attention. K.H.O., 161 N.J. at 353.

Alternatively, "[p]arental unfitness may be demonstrated if the parent has failed to provide a 'safe and stable home for the child' and a 'delay in permanent placement' will further harm the child." Id. at 352. Under this alternative

15

method of proving the second prong, a trial court examines the bonds between a child and his or her resource parent(s).  See D.M.H., 161 N.J. at 382 (finding the second prong based upon the court-appointed expert's testimony that "breaking the children's bond with their foster family would cause substantial and enduring harm to the children").

In the present case, Judge Miller found that prong two was satisfied by both methods. As to the first method, the judge found that the father had a documented history of substance abuse and refusal to accept treatment services offered by the criminal justice system and by the Division.

To underscore this finding, we recount the consequences of the father's recurrent substance abuse.  Though the father acknowledged his history of polysubstance abuse, the trial judge found a consistent lack of candor with respect to his repetitive violations.  The record reflects a pattern in which the father has claimed sobriety and cooperation with his treatment, notwithstanding the evidence indicating otherwise.  Notably, he was incarcerated for four months in 2016 on a violation of probation (VOP) for continuing to abuse illicit drugs. In the same vein, the father also attempted to evade random urine testing on multiple occasions during his participation in the Intensive Supervision Program

(ISP) and was later re-incarcerated after testing positive on three consecutive ISP drug screens in September, October, and November 2017.

Our review of the record also shows that the father has never had custody of his child save for one week in December 2017, when he misrepresented to the court that he had been compliant with services provided by the ISP after his release from prison. That one week of custody ended when he was arrested and incarcerated for violation of his ISP and later sent to an in-patient treatment facility, from which he soon was involuntarily discharged for failing a drug test. He overdosed the day after his discharge and had to be revived with Narcan. Defendant's recurrent substance abuse, viewed in the context of his denial and persistent refusal to accept treatment, amply supports the trial judge's finding that he would not be able to provide a stable home for the child.

Judge Miller also made a finding as to the alternative "safe and stable home" method of proving the second prong, based on credible expert testimony. He concluded that removing the child from her maternal grandparents would serve only to uproot her from the only home she had ever known. We agree and defer to the trial judge's conclusions with respect to both methods for establishing prong two, as they were adequately premised on substantial credible evidence.

17

C.

We next address the father's contention that Judge Miller erred in finding that the Division proved the third prong of the best-interests test. Under this prong, the trial court must decide if the Division made reasonable efforts to reunify the family. K.H.O., 161 N.J. at 354 (citing N.J.S.A. 30:4C-15.1(a)(3)). Pursuant to the statute, "reasonable efforts" are defined as:

> (1) consultation and cooperation with the parent in developing a plan for appropriate services;
>
> (2) providing services that have been agreed upon, to the family, in order to further the goal of family reunification;
>
> (3) informing the parent at appropriate intervals of the child's progress, development, and health; and
>
> (4) facilitating appropriate visitation.
>
> [N.J.S.A. 30:4C-15.1(c).]

We have previously recognized that reasonable efforts "vary depending upon the circumstances of the removal." N.J. Div. of Youth & Family Servs. v. F.H., 389 N.J. Super. 576, 620 (App. Div. 2007) (citing N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 437 (App. Div. 2007)). The Division's success regarding this prong is not measured by the parent's participation in the necessary services. D.M.H., 161 N.J. at 393. "[E]ven [the

A-2305-19T1

Division's] best efforts may not be sufficient to salvage a parental relationship." F.M., 211 N.J. at 452. Pursuant to statute, the Division must: (1) work with parents to develop a plan for services; (2) provide the necessary services; (3) facilitate visitation; and (4) notify parents of the children's progress during an out-of-home placement. N.J.S.A. 30:4C-15.1(c).

In this case, the record shows that during his periods of incarceration, the Division visited the father on a monthly basis and offered substance abuse treatment as well as supervised visitation with his child. He refused to avail himself of either treatment or visitation throughout most of his imprisonment. This pattern of denial and refusal continued after his release from prison. While in Florida, as well as during his infrequent return trips to New Jersey, he consistently refused to participate in offered treatment programs and refused to submit to urine testing.

The father claims that after he moved to Florida in October 2018, the Division failed to contact Florida officials on his behalf or provide him with an agency referral until August 2019. The father asserts that this delay constitutes a failure by the Division to make reasonable efforts to provide him with services to remediate his parenting deficiencies. We disagree. Judge Miller acknowledged that providing services under the ICPC is slow, but nonetheless

found that the Division's efforts were reasonable in the circumstances.  Judge Miller also found that the defendant continually invited his own hardships and frustrated the Division's efforts to aid him.  The judge observed, for example, that the Division provided the father with contact information for Florida service providers but he repeatedly refused to contact or cooperate with those providers. He likewise neglected to take advantage of the Division's offer to reimburse him for monthly flights back to New Jersey to visit his child, repeatedly citing the need to grow his landscaping business in Florida.  The record thus amply supports Judge Miller's conclusion that the Division made reasonable efforts to reunify the father with his child in view of his election to move to Florida.  In short, the father, not the Division, is responsible for the failure of reunification.

## D.

Finally, we address the father's contention that the Division failed to prove the fourth prong of the best-interests test, which requires that the Division demonstrate by clear and convincing evidence that "[t]ermination of parental rights will not do more harm than good."  N.J.S.A. 30:4C-15.1(a)(4).  When conducting its analysis under this prong, a trial court may rely on expert testimony when balancing the potential injury, a child could experience through the termination of parental rights against the harm the child might suffer if

removed from the resource placement. K.H.O., 161 N.J. at 355, 363. Termination of parental rights is necessary when it permits a child to have a secure and permanent home. N.J. Div. of Youth & Family Servs. v. B.G.S., 291 N.J. Super. 582, 592–95 (App. Div. 1996). Relatedly, a child should not "languish indefinitely" in an out-of-home placement while a parent tries to correct his or her parenting difficulties. N.J. Div. of Youth & Family Servs. v. S.F., 392 N.J. Super. 201, 209 (App. Div. 2007) (citing N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004)). In K.H.O., the Supreme Court affirmed the trial court's decision to terminate parental rights, holding that "where it is shown that the bond with foster parents is strong and, in comparison, the bond with the natural parent is not as strong, that evidence will satisfy the [fourth prong of the best-interests test]." K.H.O., 161 N.J. at 363.

In this instance, Judge Miller placed appropriate emphasis on the need to afford the child a sense of permanency. In reaching his conclusion, the judge relied on credible expert testimony that the child's connection with her maternal grandparents was substantially stronger than the bond she had with the father, who only had custody of her for little more than a week of her life and repeatedly failed to take advantage of visitation opportunities. Defendant's persistent

behavior demonstrated that he was not committed to reunification, as clearly shown by his unwillingness to undertake the steps needed to make reunification possible. The judge also reasoned that the grandparents had provided the child with the only home she had ever known and that it was in her best interests to stay with them permanently. Judge Miller recognized that this guardianship litigation had been unduly protracted and that the child deserved permanency after having lived all four years of her life in uncertainty.

We note, finally, that the father argues that the Division did not adequately pursue the option of having the child continue to live with her grandparents while maintaining a parenting relationship with him. The record belies his contention that the Division failed to support kinship legal guardianship (KLG) as a feasible permanent alternative. Judge Miller found that the Division had in fact offered KLG as an alternative to termination of parental rights, but that the grandparents rejected that option, preferring instead to adopt all three grandchildren in order to give them all a sense of permanency.[3]

---

[3] The father's contention that the trial judge improperly considered hearsay testimony from the Division caseworker concerning the grandparent's desire to adopt the child and her two younger half-siblings lacks sufficient merit to warrant all but brief discussion. The record includes Division case reports that show that while the grandparents briefly considered KLG in May 2019, they soon changed their minds and sought to adopt M.M. to afford her the same

In sum, we conclude that the father has repeatedly demonstrated that he is both unfit as a parent and unwilling to make the lifestyle changes necessary to provide a safe and stable environment for his child. As we noted in A.G., "[k]eeping [a] child in limbo, hoping for some long-term unification plan, would be a misapplication of the law." 344 N.J. Super. at 438. Termination of the father's parental rights was therefore appropriate and necessary in this instance to afford the child a permanent home in which she will be safe, loved, and cared for.

To the extent we have not addressed them, any remaining arguments raised by the father lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

degree of permanency as her younger half-siblings. We see no abuse of discretion in the trial judge's consideration of reliable evidence relating to the grandparents' desire and intention to adopt M.M. and her two younger siblings. See A.B., 231 N.J. at 366 (holding that a trial court's evidentiary decisions regarding hearsay are reviewed under the abuse of discretion standard). See also Rule 5:12-4(d) and N.J.R.E. 803(c)(6).