SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Luis A. Maisonet** (A-28-19) (083066)

**Argued September 15, 2020 -- Decided March 23, 2021**

**RABNER, C.J., writing for the Court.**

The Court considers whether defendant Luis Maisonet was denied his constitutional right to counsel when, on the day his murder trial was set to begin, he sought an adjournment to see if he could hire a private attorney and his request was denied.

Defendant was charged with first-degree murder and other offenses in connection with a September 2016 shooting. After learning that his ex-girlfriend and her new boyfriend, Christopher Romero, were expecting a child, defendant went to the store in the outlet mall where Romero worked, pulled out a handgun, and fatally shot Romero. Defendant then walked to the nearby store where his ex-girlfriend worked and pointed the gun at her before shooting himself in the chest area. Defendant was treated at the hospital and was arrested days later. He requested that a public defender represent him.

Trial was scheduled to start on December 4, 2017. By then, defendant had been represented by the same assistant deputy public defender for fifteen months. Right before jury selection was to begin, defendant asked the court for an adjournment. He stated that, although he would have stayed with his attorney "all the way to the end" if he had taken a plea, "I cannot go to trial with [appointed counsel]" because she had tried only two cases in her career, neither of which were murder trials.

The trial judge offered defendant two choices -- to hire his own attorney or to represent himself -- and stated, "I don't decide who represents you." When defendant interjected, the trial judge told defendant to stop talking and stated, "I have no reason to believe that [appointed counsel] cannot represent you fairly and to the best of her ability. She is an experienced lawyer." The judge denied the adjournment request and indicated that appointed counsel would represent defendant through trial.

Defendant then repeated his request for a postponement to "go back and call family . . . to see if they can get some money together" to hire a private lawyer. The judge noted that they were "here for trial" and that defendant had known about the trial, his plea offer, and who his attorney was "for a long period of time." The judge again

1

denied the adjournment request; when defendant pressed on, the judge asked defendant to take a seat so she could bring the jury in.

The case proceeded to trial, and the jury convicted defendant on all counts presented. The Appellate Division affirmed defendant's convictions. The Court granted certification limited to this question: "whether defendant's constitutional right to counsel of his choice was violated." 240 N.J. 159 (2019).

**HELD:** The Court affirms settled principles of law that require trial judges to conduct a "reasoned, thoughtful analysis" of certain factors when they consider a request for an adjournment to hire new counsel. See State v. Kates, 216 N.J. 393, 396-97 (2014); State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985). If a trial judge does not conduct the proper analysis, it may be necessary to reverse a conviction. But defendants are not automatically entitled to a new trial. When a reviewing court can glean or infer the relevant considerations from the record, it may evaluate the appropriate factors. The Court does not find an actual deprivation of the right to counsel of choice here, so the doctrine of structural error does not apply.

1. The trial court must strike a balance between (a) its right to control its own calendar and the public's interest in the orderly administration of justice and (b) a defendant's constitutional right to obtain counsel of his choice. To do so, New Jersey courts use eight factors from United States v. Burton, 584 F.2d 485, 490-91 (D.C. Cir. 1978). See Kates and Furguson. The Court reaffirms the use of those factors and reminds trial judges to analyze them when defendants request an adjournment to obtain counsel. (pp. 11-13)

2. Trial courts have broad discretion in weighing the factors. An arbitrary or erroneous ruling that amounts to an actual deprivation of the right to counsel of one's choice implicates structural error, and prejudice is presumed. But courts cannot presume structural error from a trial court's failure to ask questions or make explicit findings about the Furguson factors if the record otherwise reveals that an adjournment to seek to hire new counsel was not appropriate. If an appellate court can glean or infer the relevant considerations from the record, it can analyze the factors to determine whether the trial court abused its discretion in denying an adjournment. (pp. 13-14)

3. The Court reviews in detail case law from the D.C. Circuit and other jurisdictions which assess relevant factors on appeal in light of the record if the trial court neglected to analyze them. That approach sensibly protects both the constitutional rights of defendants and the public's interest in the orderly administration of justice. (pp. 14-17)

4. The Court evaluates the Furguson factors on the record here; though thin, the record allows consideration of nearly all of the factors. First, as to the length of the requested delay, defendant's request was open-ended, and he acknowledged he had not yet approached either his family, to see if they could provide funds, or a private attorney.

2

One can infer the delay would have been considerable. Second, the Court cannot tell whether other continuances had been requested and granted. The Court measures the third factor -- the balanced convenience or inconvenience to the litigants and the court -- in part by the timing of the request. Here, the jurors were summoned, witnesses were prepared, and the trial court's schedule was cleared prior to defendant's last-minute request. (pp. 17-18)

5. As to the fourth factor, defendant's sole reason for the request was that his lawyer lacked sufficient experience. The trial court made an express finding there was no reason to believe the experienced counsel could not represent defendant fairly. This implied the trial court's view that denying the continuance would not result in identifiable prejudice to defendant, the seventh factor. Fifth, defendant alone contributed to the circumstance that gave rise to the motion by waiting until the day of trial to ask for an adjournment and failing to act with reasonable diligence. Sixth, no other competent counsel was prepared to try the case: defendant had not yet approached his family or private counsel. As to the complexity of the case, the eighth factor, no defendant can be expected to stand trial for murder with an attorney who has not begun to prepare the case. (pp. 18-19)

6. The Court disapproves of what happened at the abbreviated hearing and directs that trial courts analyze requests for continuances to hire counsel of choice in accordance with settled case law. To accomplish that, trial judges should ask defendants questions designed to elicit information relevant to the Furguson factors. That inquiry does not have to be lengthy to facilitate a reasoned analysis of the applicable factors. (pp. 19-20)

**The judgment of the Appellate Division is AFFIRMED.**

**JUSTICE PIERRE-LOUIS, dissenting,** writes that the trial court summarily denied defendant's request without conducting the level of analysis required, which is an abuse of discretion. The trial court did not address the Furguson factors and also failed to elicit any facts from defendant or conduct any inquiry regarding his request. Further, the trial court's assessment of counsel's abilities cannot cure defendant's own concerns regarding his attorney's abilities. Justice Pierre-Louis agrees that on an adequate factual record, an appellate court can glean the relevant considerations and determine whether the trial court appropriately denied an adjournment request, but not here. This case involved a thin record of a brief proceeding during which defendant was not allowed to speak to explain his request or take advantage of one of the two options the trial court offered him before denying his request. In Justice Pierre-Louis's view, this amounts to structural error.

**JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in CHIEF JUSTICE RABNER's opinion. JUSTICE PIERRE-LOUIS filed a dissent, in which JUSTICE ALBIN joins.**

SUPREME COURT OF NEW JERSEY

A-28 September Term 2019

083066

State of New Jersey,

Plaintiff-Respondent,

v.

Luis A. Maisonet,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| September 15, 2020 | March 23, 2021 |

Margaret McLane, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Margaret McLane, on the brief).

Nicole L. Campellone, Assistant Prosecutor, argued the cause for respondent (Damon G. Tyner, Atlantic County Prosecutor, attorney; Nicole L. Campellone, of counsel and on the brief).

Joe Johnson argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Joe Johnson, Jeanne LoCicero, and Alexander Shalom, on the brief).

CHIEF JUSTICE RABNER delivered the opinion of the Court.

In this case, defendant asked for an adjournment of his murder trial on the day it was set to begin. He had been represented by an assistant deputy public defender since his arrest. Fifteen months later, and a full year after his indictment, he told the judge for the first time that he wanted to call family members "to see if they can get some money together" so that he could hire "a private lawyer." After a brief exchange with defendant, the trial judge denied the request. Defendant later challenged his conviction on the ground that he was denied his constitutional right to counsel.

Like the Appellate Division, we reject defendant's claim. We also affirm settled principles of law that require trial judges to conduct a "reasoned, thoughtful analysis" of certain factors when they consider a request for an adjournment to hire new counsel. See State v. Kates, 216 N.J. 393, 396-97 (2014) (discussing factors outlined in State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985)).

If a trial judge does not conduct the proper analysis, as happened in this case, it may be necessary to reverse a conviction and start anew. But defendants are not automatically entitled to a new trial. When a reviewing court can glean or infer the relevant considerations from the record, it may evaluate the appropriate factors, as the Appellate Division did here.

The Appellate Division found no abuse of discretion under the circumstances. We agree and affirm defendant's conviction.

I.

A.

The facts relating to the offense are not central to defendant's argument on appeal. For that reason, we summarize them briefly.

Defendant Luis Maisonet and Jennifer Villanueva had a long-term relationship that ended in 2015 or 2016. Defendant wanted to resume the relationship afterward and texted Villanueva often. Over time, he also texted, confronted, and threatened Christopher Romero, Villanueva's new boyfriend.

Villanueva and Romero worked at different retail stores in an outlet mall in Atlantic City. On September 1, 2016, they drove to work together. Several months earlier, Villanueva had told defendant that she and Romero were expecting a child.

Around noon on September 1, defendant entered the store where Romero worked, pulled out a handgun, and shot Romero. Romero fell to the ground, and defendant shot him two more times. Several witnesses in the store saw defendant shoot Romero, who died from the gunshot wounds.

Defendant then walked over to the store where Villanueva worked, pointed the gun at her, and said "bye-bye baby." He fired a round into the

3

store's ceiling and then shot himself in the chest area.  An off-duty police officer who was shopping in the store heard defendant fire the gun and saw him fall.  The officer wrestled the gun away from defendant.

After the shooting, defendant was treated at the hospital.  According to the court's intake form, defendant was arrested days later and requested that a public defender represent him.

### B.

On November 30, 2016, a grand jury in Atlantic County charged defendant in an indictment with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1); second-degree possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); fourth-degree aggravated assault (pointing a firearm), N.J.S.A. 2C:12-1(b)(4); and second-degree possession of a handgun after having been convicted of a crime, N.J.S.A. 2C:39-7(b)(1).  The State dismissed an additional charge before trial.

Trial was scheduled to start one year later, on December 4, 2017.  By then, defendant had been represented by an assistant deputy public defender for fifteen months.  Defendant does not dispute the State's representation that the same public defender represented him the entire time.

4

Right before jury selection was to begin, defendant asked the court for an adjournment. The following exchange took place:

DEFENDANT: Well, good morning, Judge -- Judge []. Your reputation and your word -- the word of the county is you're a very fair judge, a very fair judge, and I want to appeal to your fairness. When I got together with Ms. Weigel -- she's a very nice lady. I have a lot of respect for her. I told her if she could get me a deal, I'd go with her all the way to the end. Ms. Weigel has never been in murder trials before. She's only had two murder -- two trials in her practice, none of this magnitude. And I feel it's not fair to me for her to represent me in a case of this magnitude.

If I'm going to -- anything that's going to happen to me in this trial, as long as I'm defended by a lawyer that has experience in murder trials and a trial of this magnitude, I'm okay with it, but she has no experience whatsoever in this type of case and the magnitude of this case. So I don't feel that I'm being represented right.

When I got together with her in the beginning, I said if she could get me the right deal, I was okay with that. But to go to murder -- to go through a trial for murder and be represented by an attorney that has no experience, only two trial experience and lost one of them, minor trials, how do you see that's fair?

So I'm going to appeal to your fairness, because in the county the word is that you're fair, you're a very fair judge. And I cannot go to trial -- I cannot go to trial with Ms. Weigel. I respect her. I admire her very much, but I cannot go to trial with Ms. Weigel.

THE COURT: Okay. Mr. Maisonet, you have a couple of choices. You can either hire your own attorney or

5

you can represent yourself. I don't decide who represents you. I have no --

DEFENDANT: Well, then --

THE COURT: Don't -- stop talking.

DEFENDANT: I'm sorry.

THE COURT: I have no reason to believe that Ms. Weigel cannot represent you fairly and to the best of her ability. She is an experienced lawyer. I have no reason to doubt that she's unable to represent you. So at this time we haven't even started the trial, and you've already asked for a new attorney, claiming that she can't represent you. I have no evidence of that. I have no reason to believe she cannot.

DEFENDANT: In my -- in my opinion --

THE COURT: So you're shaking your head, but that's my decision. She is your attorney, and she'll be representing you through this trial.

DEFENDANT: Then I ask for a postponement so I can go back and call family members so they -- they can get some -- to see if they can get some money together and I can get me a private lawyer.

THE COURT: Okay.

DEFENDANT: Because I will not go to trial with Ms. Weigel.

THE COURT: Okay. How --

DEFENDANT: I respect her. I admire her very much. I have nothing against her, but I cannot go to trial with Ms. Weigel.

6

THE COURT:  I heard -- and you said all those things already.  Your request is denied.  We're here for trial.  So you've known about this trial for a long period of time.

DEFENDANT:  But --

THE COURT:  You've known about your offer.  You've known who your attorney is.

DEFENDANT:  Right.

THE COURT:  So we're going to proceed with trial today.  So your request is denied.

DEFENDANT:  That's -- you don't think that's unfair to me to go to trial with Ms. Weigel?

THE COURT:  I've made my ruling.  I've made my ruling.

DEFENDANT:  I'm actually -- no disrespect, Your Honor, to the Court.

THE COURT:  Well, right now you are disrespecting me, because I've made a ruling.

DEFENDANT:  I'm sorry.

THE COURT:  So I'm not going to hear anything else about that.  So you can take a seat, because I'm going to bring the jury in after we have some preliminary discussions about some other matters.

DEFENDANT:  I just want it to be on record that it's unfair to me --

THE COURT:  You're on record.  You're certainly on record.

7

DEFENDANT: -- to go to trial with an inexperienced lawyer --

THE COURT: You're saying the same things over --

DEFENDANT: -- who never been to a trial of this magnitude.

THE COURT: You're saying the same things over again. It's on record. Okay.

The case proceeded to trial on all but the last count of the indictment, possession of a handgun after having been convicted of a crime. The jury convicted defendant on all four counts. In a separate trial afterward, the jury also convicted defendant of the additional handgun possession count.

The trial court sentenced defendant to life in prison for murder, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2. The court also imposed a consecutive sentence of eighteen months for aggravated assault. One additional count was merged, and the sentences on the two remaining counts were to run concurrently.

## C.

Defendant appealed. Among other arguments, he claimed that he was deprived of his constitutional right to counsel when the trial court arbitrarily denied his request for a continuance to retain private counsel. The Appellate Division rejected the argument and affirmed defendant's convictions and sentence.

8

Citing prior precedent, the appellate court initially identified factors that trial courts should consider to assess a request for an adjournment:

> the length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.
>
> [Furguson, 198 N.J. Super. at 402 (quoting United States v. Burton, 584 F.2d 485, 490-91 (D.C. Cir. 1978).]

We refer to those factors as the Furguson or Burton factors.

Alluding to some of the factors, the Appellate Division highlighted the trial court's statements that there was no reason to believe defendant's attorney could not represent defendant fairly; that she was an experienced lawyer; and that defendant had known about the trial, the plea offer, and who his attorney was for a long period of time. The appellate court also observed that defendant offered no explanation for why he waited until the first day of trial

9

to seek a continuance and had no concrete financial plan or timetable to secure a private lawyer. As a result, the court reasoned, any continuance would have been for an indefinite period with no assurance defendant could retain private counsel.

Under the circumstances, the Appellate Division found no mistaken exercise of discretion in the trial court's denial of defendant's belated adjournment request.

We granted defendant's petition for certification limited to this question: "whether defendant's constitutional right to counsel of his choice was violated." 240 N.J. 159 (2019). We also granted leave to the American Civil Liberties Union of New Jersey (ACLU) to appear as amicus curiae.

## II.

As he did before the Appellate Division, defendant contends the trial court arbitrarily denied his request for a continuance to hire private counsel. By doing so, defendant argues, the trial court deprived him of his constitutional right to counsel. He claims the error was structural and requires the reversal of his convictions.

At the core of his argument, defendant stresses that the trial court "simply did not consider the Furguson factors at all." As a result, defendant submits, the court's decision cannot amount to an exercise of discretion.

The ACLU likewise contends the trial court failed to engage in meaningful analysis before rejecting defendant's request for an adjournment. Because the record was sparse, the Appellate Division had little to review to determine if the court's ruling was appropriate, according to the ACLU. The ACLU also argues the Appellate Division failed to analyze the denial of defendant's adjournment request for structural error, which calls for automatic reversal.

The State submits defendant's constitutional right to counsel was not violated when the trial court denied his late request for a postponement to retain private counsel. The State maintains that the colloquy between defendant and the court provided the judge with the essential information to make the proper decision -- and enough information to deny defendant's request. According to the State, a more detailed factual inquiry was not required because the trial court listened to defendant's reasons and did not need additional information.

III.

Both the Federal and State Constitutions guarantee criminal defendants the right to counsel. See U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10. As part of that guarantee, defendants who do not need appointed counsel have the

11

right "to choose who will represent" them.  Kates, 216 N.J. at 395 (quoting

United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006)).

The right is not absolute, however.  Indigent defendants represented by

court-appointed counsel do not have a right to choose their lawyer.  Id. at 395

n.1; see also Morris v. Slappy, 461 U.S. 1, 11-14 (1983) (concluding it was not

error to deny a continuance after one public defender substituted for another,

in light of the record presented).  And all defendants must act "with reasonable

diligence" when choosing counsel to avoid delaying the efficient operation of

the justice system.  Furguson, 198 N.J. Super. at 401.

In the end, "the trial court must strike a balance between its inherent and

necessary right to control its own calendar and the public's interest in the

orderly administration of justice, on the one hand, and the defendant's

constitutional right to obtain counsel of his own choice, on the other."  State v.

Hayes, 205 N.J. 522, 538 (2011) (quoting Furguson, 198 N.J. Super. at 402).

To help trial judges balance the relevant interests when a defendant

seeks an adjournment to retain counsel, we adopted a series of factors from the

D.C. Circuit's 1978 ruling in Burton.  See, e.g., Kates, 216 N.J. at 396;

Furguson, 198 N.J. Super. at 402.  The factors are recited above.

We reaffirm their use today and remind trial judges to analyze them

when defendants request an adjournment to obtain counsel of their choice.  As

12

we noted in <u>Kates</u>, trial court judges should "conduct[] a reasoned, thoughtful analysis of the appropriate factors." 216 N.J. at 396.

Trial courts have broad discretion in weighing the factors and striking the proper balance, and their decisions are entitled to deference on appeal. <u>See</u> <u>id.</u> at 397; <u>State v. Miller</u>, 216 N.J. 40, 65 (2013) (noting the deferential standard of review and stressing that "broad discretion must be granted trial courts on matters of continuances" (quoting <u>Morris</u>, 461 U.S. at 11)). An arbitrary or erroneous ruling that amounts to an actual deprivation of the right to counsel of one's choice, however, implicates structural error. <u>See</u> <u>Gonzalez-Lopez</u>, 548 U.S. at 150; <u>Kates</u>, 216 N.J. at 395-97. In such cases, prejudice is presumed. <u>Gonzalez-Lopez</u>, 548 U.S. at 146; <u>Kates</u>, 216 N.J. at 395-97. But courts cannot presume structural error from a trial court's failure to ask questions or make explicit findings about the <u>Furguson</u> factors if the record otherwise reveals that an adjournment to seek to hire new counsel was not appropriate under the circumstances.

Even the most conscientious judges make mistakes. If a trial judge fails to analyze the <u>Furguson</u> factors, that error -- in certain instances -- may amount to structural error and lead to the reversal of a conviction. Defendant and the ACLU press for a blanket rule that reversals are automatic whenever a trial court neglects to analyze the factors. We are not aware of any courts that

13

follow that course.  Instead, if an appellate court can glean or infer the relevant considerations from the record, it can analyze the factors to determine whether the trial court abused its discretion in denying an adjournment.[1]

The D.C. Circuit, our source for the proper inquiry, has followed that approach.  In <u>United States v. Rettaliata</u>, for example, the defendant asked to replace his attorney on the day of trial.  833 F.2d 361, 362 (D.C. Cir. 1987).  In response, the court conducted a hearing and heard arguments from the parties on whether the case should proceed.  <u>Ibid.</u>  The trial court then denied the request for a postponement to retain new counsel but "did not specifically list the factors that it relied upon."  <u>Id.</u> at 362-63.  On appeal, in an opinion authored by Circuit Judge Abner Mikva, the court cited the <u>Burton</u> factors, applied just a few of them to the record, and concluded "the trial judge did not abuse his discretion in denying [a] last-minute plea to obtain new counsel."  <u>Id.</u> at 363.  In short, although the trial court did not mention any factors, let alone conduct a reasoned analysis, the appellate court stepped in to perform that task based on the record.

In <u>United States v. Poston</u>, a defendant moved for a continuance the afternoon before trial was scheduled to begin so that his newly retained lawyer

---

[1]  A reviewing court can also consider whether a remand might be appropriate in a given case to expand the record.

14

could "prepare more fully for trial." 902 F.2d 90, 96 (D.C. Cir. 1990).[2] The trial judge stated he would grant the continuance only if the defendant "agreed to pay all the expenses already incurred for the trial, including the fee of his former court-appointed attorney and the expenses of the jury." Ibid. The defendant refused, and trial began with both attorneys present. Id. at 96-97.

On appeal, the D.C. Circuit recited the Burton factors and applied several of them. The Circuit effectively stepped into the shoes of the trial judge when it observed the court "could reasonably have concluded that [the defendant's] motion was 'dilatory, purposeful, or contrived'" because the defendant "provided no justification for the delay in selecting new counsel." Id. at 97 (quoting Burton, 584 F.2d at 491). Ultimately, the Circuit found no abuse of discretion. Id. at 98.

In another case, the Circuit addressed a defendant's motion to change counsel on the day of trial. United States v. Jefferson, 974 F.2d 201, 203 (D.C. Cir. 1992). For more than a year after his arrest, the defendant had been represented by an attorney who was prepared to try the case. Id. at 203-04. That lawyer informed the court that the defendant's family had retained new counsel and also moved for a continuance to allow the new lawyer time to

---

[2] The defendant offered a second reason that is not relevant here: to postpone the case until after the trial of his codefendant, who "might possibly provide exculpatory testimony." Poston, 902 F.2d at 96.

15

prepare for trial. Id. at 203. The trial court denied the motion for a continuance, citing the court's crowded trial calendar, and invited new counsel to "sit at the counsel table . . . and participate." Id. at 203-04 (ellipsis in original). The Circuit also noted the original lawyer tried the case professionally. Id. at 204.

The defendant challenged the denial of his motion for a continuance on appeal. Once again, the D.C. Circuit cited the Burton factors, applied a few of them in light of the record, and found no abuse of discretion. Id. at 204-05. See also United States v. Gantt, 140 F.3d 249, 256-58 (D.C. Cir. 1998) (considering several Burton factors on appeal and concluding the trial court acted within its discretion when it granted replacement counsel, who had been in the case for two weeks, only a two-day continuance rather than the thirty days he requested).

Other jurisdictions have taken the same approach. See, e.g., State v. Hein, 674 P.2d 1358, 1366-68 (Ariz. 1983) (en banc) (applying the Burton factors on appeal, after the trial court did not set forth its reasons on the record, and finding no abuse of discretion in the denial of a defendant's request for a continuance in order to be represented by a particular attorney); State v. Roth, 881 P.2d 268, 279 & n.12 (Wash. Ct. App. 1994) (finding no abuse of discretion in the trial court's denial of a requested continuance and

16

rejecting the defendant's challenge to "the trial court's failure to engage in on-the-record balancing to decide the counsel of choice issue" in part because "the record in this case amply permits effective appellate review of the issue").

The above approach -- assessing the relevant factors on appeal in light of the record if the trial court neglected to analyze them -- sensibly protects both the constitutional rights of defendants and "the public's interest in the orderly administration of justice." Furguson, 198 N.J. Super. at 402. Neither interest is served by a retrial if it can be determined on appeal that a trial court's denial of an adjournment request was appropriate under the circumstances.

IV.

We next consider whether the Furguson factors can be evaluated on the record here. Although the record is thin, it is adequate to allow consideration of most of the factors. We agree with the Appellate Division that a number of fact-specific considerations weighed against defendant's request for an adjournment. We address each factor in turn.

First, as to the length of the requested delay, defendant plainly stated he "cannot go to trial with" appointed counsel. His request was open-ended. He acknowledged he had not yet approached either his family, to see if they could provide funds, or a private attorney. And any attorney new to the case would have needed time to prepare to defend a murder charge. Under the

17

circumstances, even though neither the court nor defendant focused on how long of a continuance defendant wanted, one can reasonably infer the delay would have been considerable.

Second, we cannot tell "whether other continuances ha[d] been requested and granted." See Kates, 216 N.J. at 396 (quoting Furguson, 198 N.J. Super. at 402).

The third factor, "the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court," ibid., is measured, in part, by the timing of an adjournment request. As the trial court stated, "We're here for trial." To prepare for the start of a trial, jurors are summoned, witnesses are prepared, and the court's schedule is cleared. Those events took place before defendant's last-minute request, and jury selection began almost immediately after the court's ruling. The State presented its witnesses the following day. We cannot tell, however, whether the court could have begun a different trial with the assembled jury pool.

As to the fourth factor, the sole reason defendant advanced for an adjournment was that, although he was fine staying with his attorney "all the way to the end" to negotiate a plea, he thought she lacked sufficient experience to try the case. The court made an express finding on that point: "[s]he is an experienced lawyer" and there was "no reason to believe" counsel could not

18

represent defendant fairly.  Implicit in that finding was the court's view that denying a continuance would not "result in identifiable prejudice" to defendant, the seventh factor.  See ibid.

Defendant alone "contributed to the circumstance which [gave] rise" to the motion, the fifth factor.  See ibid.  He acknowledged he had worked with the same public defender "in the beginning," yet he waited until the day of trial -- more than a year after his arrest and indictment -- to ask for an adjournment. Despite having ample time to try to hire a private lawyer, he did not act with reasonable diligence.  See State v. McLaughlin, 310 N.J. Super. 242, 259 (App. Div. 1998).

The record also reveals that no "other competent counsel [was] prepared to try the case," the sixth factor.  See Kates, 216 N.J. at 396.  Defendant explained that he had not yet even spoken with family members to see if they could provide funds for him to retain private counsel.

As to the complexity of the case, the eighth factor, no defendant can be expected to stand trial for murder with an attorney who has not even begun to prepare the case.

The record thus enables us to assess nearly all of the relevant factors. To be clear, we do not approve of what happened at the abbreviated hearing and once again direct that trial courts analyze requests for continuances to hire

19

counsel of choice in accordance with settled case law. See Kates, 216 N.J. at 396-97. To accomplish that, trial judges should ask defendants questions designed to elicit information relevant to the Furguson factors. That inquiry does not have to be lengthy to facilitate a reasoned analysis of the applicable factors. Id. at 397.

Here, however, it is difficult to imagine a different outcome on the facts presented. When a defendant shows up on the morning of a murder trial, a year after indictment, and asks for time to call family members to see if they might provide funds for a private attorney, it can hardly be said that denying a request for an adjournment amounts to an abuse of discretion. See Miller, 216 N.J. at 65.

We do not find an actual deprivation of the right to counsel of choice in this case, so the doctrine of structural error does not apply.

## V.

For the reasons outlined above, we affirm the judgment of the Appellate Division.


JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in CHIEF JUSTICE RABNER's opinion. JUSTICE PIERRE-LOUIS filed a dissent, in which JUSTICE ALBIN joins.

20

State of New Jersey,

Plaintiff-Respondent,

v.

Luis A. Maisonet,

Defendant-Appellant.

JUSTICE PIERRE-LOUIS, dissenting.

In this matter, the trial court summarily denied defendant's request for an adjournment to secure private counsel of his choosing. As this Court made clear in State v. Kates, "if a trial court summarily denies an adjournment to retain private counsel without considering the relevant factors . . . a deprivation of the right to choice of counsel [can] be found" and structural error requiring reversal can be triggered. 216 N.J. 393, 397 (2014). Because the trial court summarily denied defendant's request without conducting the level of analysis required by our case law, I respectfully dissent.

This Court's opinion in Kates was written specifically to underscore the principle that "[i]f a trial court conducts a reasoned, thoughtful analysis of the appropriate factors, it can exercise its authority to deny a request for an adjournment to obtain counsel of choice." Id. at 396-97. That simply did not occur in this case, and it is my view that the trial court's failure to conduct any

1

analysis whatsoever in denying defendant's adjournment request amounts to an abuse of discretion.

As detailed in the majority's recitation of the facts, prior to jury selection, defendant attempted to explain to the trial judge his concerns with his representation. Defendant told the court that he was uncomfortable proceeding to trial with his assistant deputy public defender who had limited trial experience and had never handled a murder case. The trial judge advised defendant as follows: "[Y]ou have a couple of choices. You can either hire your own attorney or you can represent yourself. I don't decide who represents you." Moments later, however, the trial judge did in fact decide who would represent defendant when she ruled that the public defender would continue as defense counsel. That ruling was made without giving defendant an opportunity to speak or choose from the two options that the trial judge had offered him just moments earlier. Specifically, the trial judge stated, upon seeing defendant shake his head, "So you're shaking your head, but that's my decision. She is your attorney, and she'll be representing you through this trial."

When defendant was given an opportunity to speak, he indicated that he wished to avail himself of one of the two choices the trial judge had offered and asked for a postponement to determine whether his family could obtain a

2

private attorney. The trial judge simply responded, "Your request is denied." It is quite evident from the record that what transpired was a summary denial of defendant's request.

During the brief exchange between defendant and the trial court, the court unquestionably did not address the factors set forth in State v. Furguson, 198 N.J. Super. 395, 402 (App. Div. 1985), and also failed to elicit any facts from defendant or conduct any inquiry whatsoever regarding his request. Similar to what occurred in Kates, the trial court here did not "inquire of defendant himself, to determine the length of the requested delay"; did not "assess whether [the] request was made in good faith"; and did not make any "findings regarding the imperatives of its calendar." See State v. Kates, 426 N.J. Super. 32, 51-53 (App. Div. 2012).

In denying defendant's request, the court noted that defense counsel was an experienced lawyer and that the court had no reason to believe defense counsel could not represent defendant fairly and to the best of her ability. Defense counsel, however, had tried only two cases to a jury. The court's assessment of defense counsel's abilities, moreover, cannot cure the defendant's own concerns regarding his attorney's ability to properly represent him in a murder trial. See id. at 51 ("The court's only expressed basis for denying the requested continuance was its satisfaction . . . that [counsel] was

3

prepared to try the case . . . . As we have observed, the availability of competent counsel may not replace the right to choose one's own counsel."). Without question, a defendant's lack of confidence in his attorney can be detrimental to the attorney-client relationship. "[T]he court's confidence in the assigned counsel's competence [is] no substitute for the exercise of defendant's rights. 'The issue in this case is the attorney-client relationship and not the comfort of the court or the competency of the attorney.'" Id. at 49 (quoting United States v. Nguyen, 262 F.3d 998, 1004 (9th Cir. 2001)).

I agree with the majority that on an adequate factual record, an appellate court can glean the relevant considerations regarding an adjournment request and determine whether the trial court acted within its discretion to deny the request even in the case of a summary denial, like this one. Unfortunately, such an adequate factual record does not exist here. As the majority accurately pointed out, "the record is thin." Ante at ___ (slip op. at 17). In reviewing the record presented, we can do no more than make assumptions in attempting to apply a reasoned and thoughtful analysis of the Furguson factors. For example, we have no idea how long the delay would have been. Defendant might have conferred with his family and determined fairly quickly that they were either able or not able to pay for private counsel, but that is speculation since he was not allowed to do so. The record is likewise devoid of any

4

indication whether other continuances had been requested and granted in this case. And with regard to any potential inconvenience of the court, similar to Kates, "[w]e do not know whether other cases were available for the court to try, nor the impact of a continuance on the State and its witnesses, as the court did not inquire whether the State objected to the continuance." Kates, 426 N.J. Super. at 53. The sparse record here simply does not allow us to analyze the Furguson factors the way that the trial court, which was in the best position to do so, should have.

The majority cites several cases from the D.C. Circuit Court of Appeals and other jurisdictions in which the appellate courts searched the record for information to assist in conducting a meaningful inquiry regarding an adjournment request. Assessing a continuance request, however, involves "an intensely fact-sensitive inquiry." State v. Hayes, 205 N.J. 522, 538 (2011). Indeed, the cases cited by the majority are factually distinguishable from the present matter, and the trial courts in two of those cases actually held full hearings on defendants' motions for a continuance to obtain private counsel. United States v. Poston, 902 F.2d 90, 97 & n.6 (D.C. Cir. 1990) (trial court held a hearing on the defendant's motion for a continuance that would allow newly acquired counsel to prepare for trial); United States v. Rettaliata, 833 F.2d 361, 362 (D.C. Cir. 1987) (trial court held a hearing and heard argument

5

from all the parties, including a co-defendant, on the defendant's motion to postpone trial and obtain new counsel). In two other cases, courts denied continuances based on a developed record. State v. Hein, 674 P.2d 1358, 1367 (Ariz. 1983) (record reflected two previously granted continuances, a rapidly approaching speedy trial deadline, witnesses present from out of state, and a co-defendant who was anxious to go to trial); State v. Roth, 881 P.2d 268, 277-78 (Wash. Ct. App. 1994) (record reflected that the trial court had previously granted a continuance the defendant requested when defense counsel was still handling another trial and would miss jury selection).

The records in those cases were thus sufficient to allow the appellate courts to stand in the place of the trial courts and determine whether an adjournment was appropriate under the circumstances. The record here, however, is scant because "the trial court did not adequately elicit facts and apply the relevant factors to reasonably balance defendant's desire to retain counsel of his choice against the court's need to proceed with the scheduled trial." See Kates, 426 N.J. Super. at 51.

As the majority points out, the Appellate Division here noted that when defendant moved for the adjournment, he did not provide an explanation for his delay in seeking the continuance or offer a concrete plan or timetable for retaining private counsel. First, it is evident from the transcript that defendant

6

was not given the opportunity to expound upon his request: the trial judge directed him to "stop talking" and further told him to sit down because she was "not going to hear anything else about [his request]" after making her ruling. Second, "[i]t was incumbent upon the trial court to develop that record, and to apply [the Furguson] factors." Id. at 53. It certainly was not defendant's burden to craft an adjournment request perfectly tailored to this Court's jurisprudence.

There may well have been an adequate basis to deny defendant's request, but that basis was not explored prior to the court's summary denial of the adjournment request and cannot be determined from the meager record before us. See ibid. ("[W]e can imagine facts that conceivably would have justified the discretionary denial of defendant's continuance request here, based on the factors we identified in Furguson and our Supreme Court endorsed in Hayes. However, it is not for us to speculate.").

The majority notes that it does not approve of the abbreviated hearing that occurred in this case and reaffirms that "trial judges should 'conduct[] a reasoned, thoughtful analysis of the appropriate factors." Ante at ___ (slip op. at 13). Although that clearly did not happen here, the majority does not find a deprivation of defendant's right to counsel of his choice. I disagree. This case involved a thin record of a brief proceeding during which defendant was not

7

allowed to speak to provide further explanation for his request or actually take advantage of one of the two options the trial court offered him before denying his request. As the majority notes, "[i]f a trial judge fails to analyze the Furguson factors, that error -- in certain instances -- may amount to structural error and lead to the reversal of a conviction." Ante at ___ (slip op. at 13). In my view, this case represents one of those instances. No amount of speculation on appellate review with this sparse record can cure the denial of defendant's Sixth Amendment right to counsel of his choice.

For all those reasons, I respectfully dissent.