# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1107-22

A.R.,

    Plaintiff-Respondent,

v.

L.H.M.,[1]

    Defendant-Appellant.

_____

Submitted December 18, 2023 – Decided February 1, 2024

Before Judges DeAlmeida and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FV-12-0769-23.

Hark & Hark, attorneys for appellant (Michael Joseph Collis, on the briefs).

Danielle Marie Key, attorney for respondent.

PER CURIAM

---

[1] We use initials to protect the confidentiality of the record and parties. R. 1:38-3(d)(10).

Defendant L.H.M. appeals from the October 31, 2022 final restraining order (FRO) entered against him by the Family Part pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. We affirm.

I.

Defendant and plaintiff A.R. were in a romantic relationship, on and off, for approximately thirteen years and do not reside together. They have two children. The parties have joint legal custody of the children, who reside with defendant. Each party also has a son from another relationship.

On September 19, 2022, plaintiff filed a domestic violence complaint and obtained a temporary restraining order (TRO) against defendant. She alleged that, on September 18, 2022, defendant committed the predicate acts of assault, N.J.S.A. 2C:12-1, and sexual assault, N.J.S.A. 2C:14-2, against her during an altercation in the driveway of defendant's home. Plaintiff also asserted that she needed protection against future acts of domestic violence by defendant.

With respect to the history of domestic violence, the complaint alleged:

> Sometime in 2020 the defendant and the plaintiff were arguing when the defendant came towards her and she tried to push him away. The defendant then ran with the plaintiff into the wall causing her to fall on the ground with the defendant landing on top of her. The defendant tried to strangle the plaintiff but the defendant[']s son pulled the defendant off of the

2

plaintiff. The plaintiff was then able to leave the residence then walk to the hospital.

On October 27, 2022, plaintiff filed an amended complaint and TRO. The amendments concerned plaintiff's request to have the court determine parenting time for the parties' children.

On October 31, 2022, the day scheduled for the hearing, plaintiff filed a second amended complaint and TRO. The amendments added additional allegations of prior incidents of domestic violence. In addition to the alleged prior incident noted above, the second amended complaint alleges:

> 2012-Verbal abuse. 2013-Destroy items. 2013-Assault Phys[i]cal. 2013-Strangle me. 2013-Strangle me. 2013-Took items. 2013-Verbal abuse police report. 2014-Strangle me. 2015-Verbal abuse. 2017-Kick me out. 2018-Verbal assault witness and police record. 2018-Pornographic video without consent. 4-19 St[r]angle hospital report. 11-19 Audio of threats verbal physical abuse. 3-2019 Assault photos. 4-2020 Mental abuse police record and text. 3-2021 Destroying items police report. 9-2021 Photos physical assault. 10-13-2022 Audio of years of abuse.

Plaintiff served the second amended complaint on defendant on the morning of the hearing.

At the start of the hearing, defendant's counsel and the court had the following exchange:

[COUNSEL]: Your Honor, I'm forced to request an adjournment today. There was an amendment made literally this morning. I know that plaintiff's counsel states, and I have no reason to disbelieve that the amendments were actually done last week. But be that as it may, I only got these things literally moments ago, and I got medical records from St. Luke's at the same time.

It's not fair, Your Honor, and I know that they're – the allegations are primarily related to the prior history, but they are substantial. And it will take some time to unpack them and to make a timeline and compare them.

THE COURT: Unpack what?

. . . .

[COUNSEL]: Well, to unpack the allegations and also . . . to compare them . . . with phone and text records to make a timeline, to understand the medical records. And Your Honor, I know these are supposed to be summary hearings, but the fact is there's a lot being alleged here and there's a lot to be dealt with here in terms of the evidence.

. . . .

[COUNSEL]: [Defendant] has custody of the children he has with [plaintiff] and has had for three years, and that could be impacted by the results of these proceedings. And that is a substantial collateral consequence which makes it all the more important that [defendant] get the best defense possible today.

And I don't feel that I'm in a position to do that when I've just been handed these things literally moments ago.

4

THE COURT: Counsel, what you've been handed is an amendment to include history. That's it. . . . I'm denying your application. Has no impact at all [as to] the allegations raised in the complaint. The second amendment is just about history. I'm going to deny your application. This matter's been pending for well over a month.

. . . .

THE COURT: Denied. You know, here's the thing. If I give you an adjournment, it's going to be a short one. It's not going to make a difference if it's tried today or tomorrow, you know? You know, counsel, you've been strangely trying to figure a way out. If you want an adjournment for a week, I'd give you that. That's all you would get.

[COUNSEL]: Well, I think a week – honestly, I have jury duty next week, so it would have to be two weeks. But, you know, unless Your Honor can get me out of jury duty.

THE COURT: No. I'm not getting involved in your jury duty or anything else.

The court then proceeded with the trial. The parties were the only witnesses to testify. Plaintiff testified that prior to September 18, 2022, the parties had reinitiated an intimate relationship. She testified that she was at defendant's home that evening to have dinner with him and their children. Plaintiff explained that she intended to sleep at defendant's home that night. According to plaintiff, defendant began to question her regarding whether she

5

was seeing other men. When defendant refused to drop the subject, plaintiff announced that she was leaving and would spend the night at her home.

She testified that defendant who had been drinking alcohol, became upset and followed her to the driveway. According to plaintiff, defendant began calling her a "whore," grabbed her arm and chest, and pinned her against a parked vehicle. Plaintiff testified that defendant said "we could fuck right now, that's what you do," bit her ear, and placed his hand down her pants and attempted to digitally penetrate her vagina while she pleaded with him to stop. defendant placed his finger between the lips of plaintiff's vagina. Defendant then removed his hand and smeared plaintiff's vaginal fluid on her face. Plaintiff alleged that as she was attempting to leave, defendant spit on her and rubbed his hand across her face.[2]

Defendant testified that plaintiff was at his home on September 18, 2022, because she and he had agreed that after she had dinner with their children, she would spend the night for the purpose of having consensual sex. He testified that plaintiff spontaneously announced that she was menstruating and, when defendant rolled his eyes in response, invited him to join her in the bathroom to

---

[2] Criminal charges were lodged against defendant relating to the September 18, 2022 incident.

verify her statement. According to defendant, after he declined, plaintiff falsely accused him of being drunk and left the home. Defendant admitted that he followed plaintiff to the driveway and that they had a "heated" conversation as she was attempting to leave. He denied, however, having had any physical contact with plaintiff, or attempting to sexually assault her. Defendant also denied each of the prior acts of domestic violence alleged in the amended complaint.

At the conclusion of defendant's testimony, his counsel asked for a continuance of the hearing to produce defendant's son as a witness with respect to the incident that plaintiff alleged resulted in her walking to a hospital. The trial court denied that request, concluding that the original complaint alleged that defendant's son pulled defendant off of plaintiff during the incident, putting defendant on notice to have his son ready as a witness on the day of the hearing. After the trial court's denial of the request for a continuance, defendant's counsel referred to a letter stating that the son was having surgery on the day of the hearing. Counsel did not, however, attempt to admit the letter as evidence. The trial court again denied the request.

The trial court issued an oral opinion. The court found plaintiff to be credible and to have provided an accurate account of what transpired on

7

September 18, 2022. In making its credibility determination, the court relied, in part, on plaintiff's testimony with respect to several of the prior acts of domestic violence alleged for the first time in the second amended complaint. The court found that plaintiff described these events in her testimony in a manner consistent with corroborating evidence, enhancing her credibility as a witness.

In contrast, the court found defendant's testimony to be "bizarre" in some respects and lacking in credibility. The court concluded that overwhelming evidence established that defendant's conduct on September 18, 2022, constituted an assault and a sexual assault of plaintiff.

With respect to the parties' history of domestic violence, the court found that defendant "abused [plaintiff] over the years." In assessing plaintiff's credibility, the court noted the strength of the evidence establishing the truth of plaintiff's allegations regarding the April 2019 incident described in the initial and amended complaints in which she walked to a hospital for treatment. The court, however, did not rely on that incident when discussing the history of domestic violence.[3] The court found that defendant slammed a screen door on plaintiff's leg in September 2021, which it determined to be a prior act of

---

[3] The amended complaint alleged that the incident in which plaintiff walked to the hospital for treatment took place "[s]ometime in 2020." Plaintiff's testimony and hospital records established that the incident took place in April 2019.

domestic violence. That incident was alleged for the first time in the second amended complaint as "9-2021 Photos physical assault."

The court found that the record established that plaintiff was in need of protection from imminent danger and future acts of domestic violation. As a result, the court entered the October 31, 2022 FRO.

This appeal followed. Defendant argues that the trial court abused its discretion by denying his requests for an adjournment at the start of the hearing and during the hearing to produce his son as a witness.

II.

Defendant's arguments with respect to the denial of his adjournment requests must be analyzed in the context of the overall structure of FRO hearings. The entry of an FRO requires the trial court to make certain findings. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The court first "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Next, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127 (citing N.J.S.A. 2C:25-29(b));

see also J.D. v. M.D.F., 207 N.J. 458, 476 (2011). This determination requires evaluation of:

> (1)  The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2)  The existence of immediate danger to person or property;
>
> (3)  The financial circumstances of the plaintiff and defendant;
>
> (4)  The best interest of the victim and any child;
>
> (5)  In determining custody and parenting time the protection of the victim's safety; and
>
> (6)  The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a); see also Cesare v. Cesare, 154 N.J. 394, 401 (1998).]

Defendant argues that the trial court's denial of his adjournment requests deprived him of due process. "Due process is 'a flexible [concept] that depends on the particular circumstances.'" H.E.S. v. J.C.S., 175 N.J. 309, 321 (2003) (alteration in original) (quoting Doe v. Poritz, 142 N.J. 1, 106 (1995)). "What that means is that '[a]t a minimum, due process requires that a party in a judicial hearing receive notice defining the issues and an adequate opportunity to prepare and respond.'" J.D., 207 N.J. at 478 (alteration in original) (quoting McKeown-

Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993) (internal quotations omitted)).

> There can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice. It offends elemental concepts of procedural due process to grant enforcement to a finding neither charged in the complaint nor litigated at the hearing.
>
> [Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 162 (1978) (quotation omitted).]

The Supreme Court examined due process concerns arising in domestic violence hearings in two opinions that guide our analysis here. In H.E.S., the trial court, over the defendant's objection, permitted the plaintiff to testify about both an alleged predicate act and several alleged prior acts of domestic violence that were not set forth in the complaint. 175 N.J. at 317. Those allegations were raised for the first time during plaintiff's testimony at the hearing. Ibid.

At the close of plaintiff's testimony, the court permitted a one-day continuance to allow defendant to consult with his counsel prior to presenting his case-in-chief. Id. at 318. After the one-day continuance, defendant's counsel asked for an additional continuance, arguing he needed more time to prepare a defense to the allegations first raised during plaintiff's testimony and to subpoena the police officers who responded to the newly alleged incidents. Ibid.

The trial court denied the request.  Ibid.  Ultimately, the trial court determined it would not consider the prior acts of domestic violence raised for the first time during the plaintiff's testimony because they were too remote in time from the predicate acts and did not establish a pattern of violent behavior.  Ibid.  The court did, however, find that plaintiff had proven the predicate act of domestic violence first raised during her testimony and relied on that predicate act as a basis for issuance of an FRO.  Id. at 319.

On appeal, we held that the trial court's reliance on the predicate act not alleged in the complaint did not violate the defendant's due process rights because he was given a one-day continuance to prepare a defense.  Ibid.  The Supreme Court reversed.  The Court held that the defendant's "due process rights were . . . violated by the trial court's refusal to grant an adjournment after plaintiff alleged an incident of domestic violence not contained in the complaint . . . and by the court's decision to grant a FRO on the basis of that allegation." Id. at 324.  As the Court explained, "it constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint." Id. at 325 (quoting J.F. v. B.K., 308 N.J. Super. 387, 391-92 (App. Div. 1998)).  "The fact that defendant's counsel had overnight to

12

consider his response does not diminish defendant's due process rights in this case." Ibid. (quotations and citation omitted). Therefore, the Court vacated the FRO. Ibid. Because the trial court did not rely on the prior acts of domestic violence raised for the first time during the plaintiff's testimony, the Court did not address due process concerns with respect to that aspect of the plaintiff's testimony.

In J.D., the Court addressed the due process rights of a defendant with respect to prior acts of domestic violence identified for the first time at an FRO hearing. 207 N.J. at 466-68. There, the plaintiff filed a domestic violence complaint alleging, in addition to a predicate act of domestic violence, four prior acts of domestic violence. Ibid. At the hearing, in response to an open-ended question from the court, the plaintiff testified with respect to multiple prior acts of domestic violence not alleged in the complaint. Ibid. At the conclusion of the plaintiff's testimony, the defendant told the court that he was not prepared to respond to the plaintiff's testimony about the prior acts of domestic violence not alleged in the complaint. Id. at 468-69. Notwithstanding defendant's statement, the trial court proceeded to take testimony from defendant regarding the alleged past acts. Id. at 469. The trial court subsequently relied on the past acts of

domestic violence not alleged in the complaint when reaching its decision that the alleged predicate act constituted harassment.  Id. at 470.

On appeal to this court, the defendant argued, among other things, that he was denied due process because the trial court permitted testimony about the past acts of domestic violence not alleged in the complaint.  Ibid.  We affirmed, concluding that the contested testimony was properly admitted.  Id. at 470-71.

The defendant raised the same argument in the Supreme Court.  Id. at 471. The Court noted that during FRO hearings parties often expand upon the history of domestic abuse alleged in their complaints.  Id. at 479.  In addition, the Court found that trial courts often will attempt to elicit a fuller picture of the history of the parties' relationship during a hearing.  Ibid.  The Court held by eliciting testimony that "allows" the prior history alleged in the complaint "to be expanded," the trial court "permitted an amendment to the complaint and must proceed accordingly."  Id. at 479-80.  As the Court explained,

> To be sure, some defendants will know full well the history that plaintiff recites and some parties will be well-prepared regardless of whether the testimony technically expands upon the allegations of the complaint.  Others, however, will not, and in all cases the trial court must ensure that defendant is afforded an adequate opportunity to be apprised of those allegations and to prepare.  See H.E.S., supra, 175 N.J. at 324 (concluding that allowing defendant only twenty-four hours to prepare violates due process).

> When permitting plaintiff to expand upon the alleged prior incidents and thereby allowing an amendment to the complaint, the court also should have recognized the due process implication of defendant's suggestion that he was unprepared to defend himself. Although defendant's assertion that he needed time to prepare was not cloaked in the lawyer-like language of an adjournment request and was made as part of a longer response to a question, it was sufficient to raise the due process question for the trial court and it should have been granted. Our courts have broad discretion to reject a request for an adjournment that is ill founded or designed only to create delay, but they should liberally grant one that is based on an expansion of factual assertions that form the heart of the complaint for relief.

> [Ibid.]

The Court noted that granting an adjournment to give defendant time to prepare to address new allegations of prior acts of domestic violence poses "no risk to plaintiff" because "courts are empowered to continue temporary restraints during the pendency of an adjournment," which will fully protect the plaintiff while affording the defendant due process. Ibid. So, the Court held that the denial of the defendant's adjournment request, along with other errors, warranted reversal of the FRO and remand for a new trial. Id. at 481-82, 488.

In the present matter, the trial court did not depart from the holding in either H.E.S. or J.D. Plaintiff served defendant with a second amended complaint alleging additional prior acts of domestic violence on the morning of

15

the hearing. The second amended complaint did not allege a new predicate act; rather it expanded on the history that had been previously set forth in the prior complaints.

Defendant's counsel informed the trial court that he was not prepared to address the new allegations of prior acts of domestic violence. Although the court's initial response was to deny the adjournment request, it subsequently offered to adjourn the hearing for one week. Unlike the facts before the Court in H.E.S. and J.D., the adjournment offered by the trial court would have provided defendant's counsel sufficient time to prepare a defense to the new allegations set forth in the second amended complaint. We, therefore, reject defendant's contention that he was denied due process.

We acknowledge that defendant's counsel declined the court's offer and requested a two-week adjournment, asserting that he was scheduled for jury duty on the proposed new return date for the hearing. We see no mistaken exercise of discretion in the trial court's refusal to adjourn the hearing for an additional week. Generally speaking, "[a] court may exercise broad discretion in controlling its calendar." State v. Kates, 426 N.J. Super. 32, 45 (App. Div. 2012). Thus, we review a trial court's decision for an abuse of discretion. Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 233 (App. Div. 2020). An abuse

16

of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)).  When reviewing the denial of an adjournment request, we consider "the amount of prejudice suffered by the aggrieved party" and will reverse where the denial has resulted in an injustice.  Escobar-Barrera, 464 N.J. Super. at 233.

Trial courts must complete FRO hearings promptly.  See R. 5:7A-(e) ("A hearing for a final restraining order shall be held in the Superior Court within 10 days of the filing of an application.");  accord N.J.S.A. 2C:25-29(a).  However, "to the extent compliance with the ten-day provision precludes meaningful notice and an opportunity to defend, the provision must yield to due process requirements."  H.E.S., 175 N.J. at 323.  The TRO against defendant had been issued well over a month prior to the October 31, 2022 hearing.  Given the amount of time that had passed since the issuance of the original TRO, the one-week adjournment offered by the trial court satisfied both the statutory obligation to adjudicate the matter promptly and defendant's due process rights.

Defendant's counsel, although stating that he was assigned jury duty for the week after the hearing, did not state that he had been told to report to the

courthouse for jury duty on the day the trial court proposed for the adjourned hearing. Nor did defendant's counsel indicate that it would not be possible to have another attorney from his firm represent defendant at the adjourned hearing in the event that he was required to report to the courthouse for jury duty on the adjourned date. In light of these circumstances, the trial court permissibly exercised its discretion.

We reach the same conclusion with respect to the trial court's denial of defendant's request to adjourn the hearing to produce his son as a witness. The initial complaint, as well as both amended complaints, alleged that defendant's son intervened to stop defendant's physical abuse of plaintiff on the day that she walked to the hospital for medical treatment. Defendant was on notice that if he wished to produce his son as a witness to this event he had to do so on the date of the hearing. Moreover, defendant did not raise the issue of his son not being available to testify until after both parties had completed their testimony. It was within the trial court's discretion to deny defendant's last-minute adjournment request relating to his son.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18